J-S17035-22

2022 PA Super 155

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     : PENNSYLVANIA
                                     :
              v.                     :
                                     :
                                     :
                                     :
ANDRE BOYER                          :
                                     :
              Appellant              : No. 1165 EDA 2021

Appeal from the Order Entered May 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  MC-51-MD-0000039-2020

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

OPINION BY STABILE, J.:                    **FILED SEPTEMBER 08, 2022**

Appellant, Andre Boyer, appeals from the May 10, 2021 order entered in the Court of Common Pleas of Philadelphia County finding him guilty of indirect criminal contempt.  23 Pa.C.S.A. § 6114.[1,2]  Appellant argues that the trial court erred by denying his due process rights, that it lacked jurisdiction to enter the order, and that the evidence was insufficient to support a finding of indirect criminal contempt.  Upon review, we affirm.

_____

[1] "An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court[.]" ***Commonwealth v. Mayberry***, 255 A.2d 548, 551 (Pa. 1969) (citations omitted).

[2] Appellant "is a former Philadelphia Police Department (PPD) police officer and has reported on police corruption within the [PPD] for over six years as character personality, Serpico, on news social media, Serpico News." Appellant's Brief at 6 (footnote omitted).

Appellant's conviction stems from the service of a subpoena directing him to appear as a witness in a grand jury investigation. As the trial court explained:

During the period of July, 2019 through March, 2021, the trial court was the supervising judge of the Thirtieth Investigating Grand Jury for Philadelphia County. As part of its responsibilities, the trial court swore in all witnesses who were to be presented to the investigating grand jury and presided over any proceedings related to the investigating grand jury, including violations of the oath of secrecy. On September 5, 2019 a hearing regarding grand jury investigation C-22 was held. The purpose of this hearing was to give Appellant the witness oath and the grand jury oath of secrecy.[3] Initially, prior to Appellant being present and before the administration of the oaths to Appellant, the only parties present [were] the assigned Assistant District Attorney, Tracy Tripp, a court reporter, and the trial court.

During this initial portion of the hearing, the Commonwealth recounted that, prior to September 5, 2019, Sergeant Detective Gerry Rocks requested Andre Boyer [] to come to the District Attorney's Office. Sergeant Rocks did not inform Appellant that this was so he could be served with a grand jury subpoena related to grand jury investigation C-22. Appellant did not appear, instead, Appellant sent Sergeant Rocks an email accusing the District Attorney's Office of trying to trick him into coming in so that he could be arrested.

A few days later, Detective Frank Wallace served a grand jury subpoena on Appellant. He explained to Appellant it was a grand jury subpoena, told Appellant the date that he was requested to appear, and explained the sealing order and its impact on Appellant, i.e., Appellant is unable to discuss any of this information. Apparently, while Detective Wallace was serving the subpoena, Appellant was recording and live streaming all that was transpiring onto social media from his phone in his pocket. Appellant repeated what Detective Wallace explained to him to show his understanding of the subpoena and the sealing order and

_____

[3] We have taken the liberty of substituting "Appellant" for "the Defendant" in this and other excerpts quoted herein from the trial court's opinion.

recorded all of this on his phone in his pocket. Within 15 to 20 minutes after serving the subpoena and getting in his car to leave, Detective Wallace received numerous notifications from police officers who recognized him from Appellant's live stream. The Commonwealth was notified by a detective in Internal Affairs that the service of the subpoena had been live streamed, but by the time they had been notified, Appellant's live streamed video was gone and could not be retrieved by the Commonwealth.

On September 5, 2019, Appellant appeared before [the] trial court related to grand jury investigation C-22 so that he could be sworn in as a witness, advised of his rights and duties as a witness, and so that he could receive the oath of secrecy related to grand jury witnesses. As is common in grand jury matters involving only the administration of oaths to witnesses, Appellant was not represented by an attorney. However, on this date during the administration of the witness oath, he was advised of his right to retain an attorney or have an attorney appointed to represent him during the time that he would be a witness testifying before the grand jury.

On this date, Appellant was informed about what the grand jury investigation was related to; who the target of that investigation was, and what information he would be asked to supply to the grand jury. At the September 5, 2019 hearing, the trial court issued a verbal order directing Appellant:

> Again, Mr. Boyer, nothing that is being said in this room, nothing that you told Ms. Tripp about the nature of the investigation, and nothing about your testimony itself[,] what you say or what you learn during the course of this investigation as it relates to you being a witness before the Grand Jury is something you can reveal. You already revealed certain things on your blog or news media website. Obviously, that is not covered because that happened way before this conversation, but if there is anything that you learn as a result of you being a witness that cannot make it to your website. . . . You have the obligation to give continuing information to Ms. Tripp. . . . What you have to do is give the information that you have in your possession at the time that you are being asked questions, you are to be truthful and accurate.

N.T. 09/05/2019 at 26-29. The trial court further instructed Appellant, ". . . if you get more information from your sources about this, it doesn't come from your testimony, it comes from something else, are you allowed to publish that[?] And it pains me, but I suspect the answer is yes. In that publishing you certainly cannot say, oh, by the way this is a grand jury investigation." *Id.* at 29-30.

Prior to the date that he was scheduled to testify before the investigating grand jury, Appellant was arrested. Appellant was arrested by Detective Frank Wallace for a Violation of the Uniform Firearms Act (VUFA 6108)[4]. Detective Wallace arrested Appellant prior to Appellant giving testimony because Appellant was informed of the warrant for his arrest and attempted to flee.

Subsequently, on August 23, 2020, Appellant posted a video to his media website, Philly Serpico News, titled, "Corruption in Philly Serpico News." The video and post stated that a Philadelphia 35th District Detective arrested a grand jury witness moments before he was set to testify against a high-ranking Philly police boss, then put a contract hit out on his life. Appellant further alleges in his video that the subject of the grand jury matter is [that] a high-ranking staff inspector assaulted a Temple University student in his police car and that the grand jury is set to indict the high-ranking staff inspector.

On October 29, 2020, a hearing regarding grand jury investigation C-22 was held. The trial court issued a Rule to Show Cause as to why Appellant should not be held in indirect criminal contempt of a Court Order because Appellant had violated the trial court's order and the grand jury secrecy oath by posting the aforementioned video on August 23, 2020. At the time of the hearing, the post and video were still live on the website. Additional evidence and testimony was presented at a second hearing on this matter on April 20, 2021.

On May 6, 2021, a final hearing regarding grand jury investigation C-22 was held. The trial court had previously held its decision whether to find Appellant in indirect criminal contempt under advisement from the April 20, 2021 hearing. The trial court found

---

[4] Section 6108 relates to carrying firearms on public streets or public property in Philadelphia.

Appellant to be in indirect criminal contempt of its verbal order issued on September 5, 2019. The trial court did not impose a fine or incarceration, but ordered that Appellant be precluded and ordered not to reference any additional grand jury material related to what he was told the investigation was about on his media website in written, oral, or audio format.

Trial Court Rule 1925(a) Opinion, 8/31/21, at 3-6 (some citations to notes of testimony from the May 6, 2019, October 29, 2020, April 20, 2021, and May 6, 2021 hearings omitted).

The trial court's May 10, 2021 order states:

Now, this 10th day of May, 2021, [Appellant] having been found guilty of indirect criminal contempt of this court's order dated September 5, 2019, [Appellant] shall not post any grand jury materials or discuss any matters related to any grand jury investigation or targets on any news media website or social media websites.

[Appellant] is not to engage in any conversation or discussions related to grand jury materials, grand jury targets, or grand jury witnesses, related to their involvement with the grand jury, with anyone other than his attorney.

[Appellant] is not to utilize any video pertaining to grand jury materials, targets, witnesses, or individuals in any capacity.

If [Appellant] wishes to discuss these matters or utilize video for any purpose, he is to seek leave from the court to disclose these materials for these other purposes. Upon such motion a hearing will be scheduled.

Order, 5/10/21, at 1 (some capitalization omitted).

Appellant filed a timely appeal from the May 10, 2021 order. Both he and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider the following issues on appeal:

A. *Due Process* – Whether the trial court erred in denying Appellant's due process rights in violation of Article 1, Section 9 of the Pennsylvania Constitution and the 14th Amendment of the U.S. Constitution, where there was no notice of an indirect criminal contempt charge prior to the contempt hearing commencing.

B. *September 5, 2019 Nondisclosure Order*

1. *Verbal Order* – Whether the trial court erred in finding indirect criminal contempt for violating an order, as the alleged violated verbal order given September 5, 2019, and not followed by a written order, is not enforceable to find Appellant in indirect contempt.

2. *42 Pa.C.S. § 4549(d) Cause Hearing* – Whether the trial court lacked jurisdiction to enter a September 5, 2019 witness nondisclosure order where Appellant moved for the release of the unredacted transcript and there was no evidence that a cause hearing prior to the nondisclosure order was held pursuant to 42 Pa.C.S. § 4549(d).

C. *May 10, 2021 Nondisclosure Order*

1. *42 Pa.C.S. § 4549(d) Cause Hearing* – Whether the trial court lacked jurisdiction to enter the May 10, 2021 order prohibiting Appellant from posting any grand jury materials or discussing any matters related to "any" grand jury investigation, for which he has not been called as a witness and there is no evidence that a cause hearing prior to the nondisclosure order was held pursuant to 42 Pa.C.S. § 4549(d).

2. *Overbreadth* – Whether the trial court's May 10, 2021 order is overly broad by making everything connected with grand jury investigations untouchable, and violates Appellant's First Amendment right of freedom of speech and press.

Whether the trial court erred when ordering Appellant to file a motion with investigating grand jury supervising judge, the Hon. Kai N. Scott[, the trial judge,] for leave or *in limine* requesting permission to present his defense

- 6 -

and admit evidence in another case pending in Municipal Court.

D. *Sufficiency of Evidence*

1. *Definite, Clear and Specific Nondisclosure Order* – Whether the evidence was insufficient to support a finding of indirect criminal contempt, as the September 5, 2019 verbal order was not definite, clear and specific, and left doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited, particularly given that Appellant showed lack of understanding and had no attorney present.

2. *Wrongful Intent* – Whether the evidence was insufficient to support a finding of indirect criminal contempt, as the Commonwealth failed to show that Appellant acted with wrongful intent to disobey a court order.

Appellant's Brief at 2-4.

In **Commonwealth v. Lambert**, 147 A.3d 1221 (Pa. Super 2016),

this Court explained:

> To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012).

> When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court decision. **Williams v. Williams**, 681 A.2d 181, 183 (Pa. Super. 1996). We will reverse a trial court's determination only when there has been a plain abuse of discretion.

> **Commonwealth v. Kolansky**, 800 A.2d 937, 939 (Pa. Super. 2002).

*Id.* at 1226 (cleaned up).

In his first issue, Appellant contends the trial court violated his due process rights because there was no notice of an indirect criminal contempt charge prior to the commencement of the contempt hearing. He complains the rule to show cause directing him to appear at the October 29, 2020 hearing "failed to provide notice of the specific accusations against Appellant, and if the Commonwealth is seeking fines and/or imprisonment. Appellant had no notice of whether he was being accused of civil or indirect criminal contempt." Appellant's Brief at 19.[5]

Appellant's assertion that he was not given notice of specific accusations is belied by the statement of his counsel at the beginning of the October 29, 2020 hearing. At that time, his counsel represented that

> the defense is that my client did not intentionally try to violate the court order with respect to violating a secrecy oath. That what he was trying to do is present his own defense in his criminal case; and that defense is that he suffered witness intimidation. So what was being revealed was not that the particular target of this grand jury investigation was actually under a grand jury investigation, but that my client had been intimidated as a witness before the grand jury.
>
> . . .

---

[5] Appellant acknowledged that the court clarified during the October 29, 2020 hearing that Appellant was being charged with indirect criminal contempt. Appellant's Brief at 19, n.15 (citation to notes of testimony omitted).

And what you are going to see on this video is not him saying the target, this particular person is under grand jury investigation and trying to violate it in that way.

N.T., 10/29/20, at 3-4, 6 (unnecessary capitalization omitted).

The trial court rejected Appellant's contention regarding lack of notice, explaining that he was given

more than adequate notice: the supervising investigation grand jury judge made sure to explain what Appellant could and could not do . . . [and] also answered any questions Appellant had about what was permissible to post on his website and what his obligations were to avoid violating his oath of secrecy; and the trial court issued a Rule to Show Cause as to why Appellant should not be held in contempt for violation of his grand jury secrecy oath. As such, Appellant's due process rights were not violated and he received more than sufficient notice, therefore, the trial court had proper jurisdiction.

Trial Court Rule 1925(a) Opinion, 8/31/21, at 11-12 (citation to notes of testimony from October 29, 2020 hearing omitted).

Based on our review of the record, we find that facts support the trial court's findings and that the court did not abuse its discretion in determining that Appellant's due process rights were not violated. Therefore, we conclude that Appellant is not entitled to relief on his first issue.

In the first part of his second issue, Appellant argues that the trial court erred by finding him in contempt because the September 5, 2019 order was verbal, was not reduced to writing, and was therefore unenforceable. Appellant's argument is meritless.

Appellant cites **In re Tumpson**, 345 A.2d 774 (Pa. Super. 1975), for the proposition that an oral order has no force or effect. Appellant's Brief at

21. In **Tumpson**, counsel for a juvenile was convicted of indirect criminal contempt for allegedly advising a client to disobey a court order. However, no order had been issued. Rather, the trial court orally advised a juvenile probation officer that a hearing would be held in the juvenile's case. The probation officer told the judge he would notify the juvenile, and did so.

When the juvenile did not appear for the hearing, a bench warrant for his arrest was executed and the hearing was rescheduled. At the rescheduled hearing, the juvenile explained that he did not appear at the first hearing based on advice of his counsel, Tumpson. In response, the court issued a contempt citation and ordered counsel to show cause why he should not be held in contempt.

At the hearing on the rule, counsel requested a continuance to obtain his own counsel but also requested a copy of the order that he purportedly advised the juvenile to disobey. The court did not provide a copy of the order, acknowledging it was oral. The court allowed a continuance but eventually found counsel in contempt and fined him $50.

On appeal to this Court, we reversed, finding the oral "order" had no force or effect. As the Court observed:

> Decrees and orders of court of record cannot be carried in the breast of the judge who makes them. If any regard is to be had to the regular and orderly conduct of judicial proceedings in such courts, all their orders, rules, and degrees must be recorded. The verbal order referred to never was recorded, and its first and only appearance in the case is the reference made to it in the appellee's answer to appellant's rule to show cause.

*Tumpson*, 345 A.2d at 776 (quoting *Commonwealth ex rel. Magaziner v. Magaziner*, 253 A.2d 263, 267 (Pa. 1969)).

We find that *Tumpson* is inapposite. There, the judge conveyed information about a scheduled proceeding to a probation officer who agreed to convey it to the juvenile. In contrast, here the trial court issued an order from the bench that was transcribed, thus creating a record of the order. As the trial court observed, "[L]itigants must be able to rely on representations made by the court, and it would be inequitable and detrimental to the functioning of the judicial system if such on-the-record representations could not be trusted." Trial Court Rule 1925(a) Opinion, 8/31/21, at 12 (quoting *Jackson v. Hendrick*, 746 A.2d 574, 576 (Pa. 2000) (plurality)).

As the Commonwealth notes:

[Appellant] was informed at the September 5, 2019 hearing that he was not permitted to reveal any information regarding the grand jury investigation. He repeatedly stated that he understood the court's order and would follow it. Although the order was provided to him orally, it was stenographically recorded on the record, as were Appellant's representations that he understood and would follow the order. Thus [his] assertion that the order "was not reduced to writing" and therefore was "not enforceable" against him—or, in other words, could be completely ignored by him without any consequences—is baseless.

Commonwealth Brief at 22. We agree. Despite his assertions to the contrary, *Tumpson* does not afford Appellant any relief in the instant action.

In the second part of his second issue, Appellant cites 42 Pa.C.S.A. § 4549(d) in support of his contention that the trial court lacked jurisdiction to enter the September 5, 2019 witness nondisclosure order. Similarly, in the

- 11 -

first part of his third issue, he cites Section 4549(d) in support of his argument that the court lacked jurisdiction to enter the May 10, 2021 nondisclosure order relating to grand jury materials. The cited provision (Investigating Grand Jury Proceedings – Disclosure of Proceedings by Witness) directs that "[n]o witness shall be prohibited from disclosing *his testimony* before the investigating grand jury except for cause shown in a hearing before the supervising judge. In no event may a witness be prevented from disclosing his testimony to his attorney." 42 Pa.C.S.A. § 4549(d) (emphasis added).

The Commonwealth highlights the fact that Section 4549(d) precludes prohibition of a witness's disclosure of "his testimony." However, Appellant never testified before the grand jury. Therefore, he could not have been found in contempt based on disclosure of his own testimony. Instead, he was found in contempt "because, in violation of the judge's order, [Appellant] revealed that there was a grand jury proceeding and the substance of the matter it was investigating." Commonwealth Brief at 25. "Since a cause hearing need be held only when a judge is prohibiting a witness from disclosing his 'testimony,' and since [Appellant] ultimately had no testimony to disclose, the question of whether a proper cause hearing was held is moot and cannot serve as a basis for relief." *Id.* Moreover, in any event, the Commonwealth contends, the court did hold a proper cause hearing before issuing its order. *Id.* at 26.

In addition to claiming lack of jurisdiction regarding the May 10, 2021 order, Appellant argues in the second part of his third issue that the May 2021

order is overly broad.  In response, the Commonwealth not only recognized the important governmental interest in protecting the secrecy of grand jury proceedings, Commonwealth Brief at 32, but also noted that Appellant "had already directly violated the court's earlier nondisclosure order."  *Id.* at 31. The Commonwealth highlighted Appellant's claim that he was confused by the order and did not realize posting a video on the Internet that disclosed the existence and subject of the investigation was prohibited, a claim dispelled by a review of Appellant's own testimony.  The Commonwealth also correctly observed that the May 2021 order was necessary to ensure that Appellant "did not once again violate the secrecy of the grand jury proceedings, and [to avoid] confusion, real of feigned, on [Appellant's] part regarding what information he was precluded from revealing." *Id.*

Addressing and rejecting Appellant's assertions regarding both the September 2019 and May 2021 orders, the trial court explained:

> On September 5, 2019, the supervising judge presiding over the investigating grand jury issued both a secrecy oath and a nondisclosure order to Appellant.  The trial court had jurisdiction to enter both the September 5, 2019 witness nondisclosure order and the May 10, 2021 order prohibiting Appellant from posting any grand jury materials because Appellant had received, understood, and agreed to the secrecy oath and nondisclosure order.  During the hearing held on September 5, 2019, one of the first questions Appellant was asked about was regarding the grand jury subpoena and the sealing order he received while livestreaming.  The trial court had a long conversation with Appellant regarding the secrecy oath, answered any questions Appellant had, and the May 10, 2021 order essentially reduced the trial court's verbal order to a written order and re-emphasized the secrecy aspect of his previous oath.

> The cause hearing for the nondisclosure order was held prior to the date that Appellant was sworn in on September 5, 2019, without the presence of Appellant. The Commonwealth was the party requesting the nondisclosure order and explained why there should be a nondisclosure order issued. As with all grand jury matters, a witness (in this case Appellant) is not entitled to hear relevant information about what other witnesses may say that may have gone to the supervising judge's determination that the nondisclosure order was appropriate. In the instant matter, a nondisclosure order was deemed appropriate, in part, based on Appellant's prior conduct of recording being served with the grand jury subpoena and his actions of holding himself out as the press.

Trial Court Rule 1925(a) Opinion, 8/31/21, at 10-11 (citations to notes of testimony omitted).

We dismiss Appellant's suggestion that the May 2021 order violated his freedom of speech and somehow impaired his ability to prepare a defense in his unrelated VUFA case. As the Commonwealth contends, the order "simply requires [Appellant] to obtain the supervising judge's permission before disclosing grand jury information, and this requirement is necessary because [Appellant] has blamed his failure to follow the earlier nondisclosure order on his inability to understand what the order covered." Commonwealth Brief at 32. With regard to his defense of the VUFA charges, the court's order "permits [Appellant] to seek leave of court if he has reason to use the grand jury information," *id.* at 33, and can obtain relief, if he can demonstrate how that information can in anyway be relevant to his firearms charges. Therefore, we reject any assertion that the order imposes an improper restriction on his ability to defend himself.

- 14 -

Based on our review, we conclude that trial court had jurisdiction to enter both the September 5, 2019 and May 10, 2021 orders, and further conclude that, under the circumstances of this case, the May 10, 2021 order is not overly broad and does not preclude Appellant from seeking leave of court to disclose materials. Finding no abuse of discretion on the part of the trial court, we shall not disturb its conclusions. Appellant's second and third issues fail for lack of merit.

In his fourth issue, Appellant challenges the sufficiency of the evidence supporting a finding of indirect criminal contempt. He argues that the order was not definite, clear, or specific, and further contends that the Commonwealth failed to demonstrate that Appellant acted with wrongful intent to disobey a court order.

In *Commonwealth v. Walsh*, 36 A.3d 613 (Pa. Super. 2012), this Court reiterated:

> Our standard of review in assessing whether sufficient evidence was presented to sustain [an a]ppellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial

evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* at 618-19 (quoting ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109-10 (Pa. Super. 2007) (citations omitted)). Again,

[t]o establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Id.* (quoting ***Brumbaugh***, 932 A.2d at 110) (citation omitted).

Here, the trial court concluded that its order was sufficiently definite, clear, and specific "as to leave no doubt of the conduct prohibited in [Appellant's] mind. [He] was clearly told that he could not speak about anything that was being said in the room, including the nature of the investigation and that a grand jury investigation even existed." Trial Court Rule 1925(a) Opinion, 8/31/21, at 14. Further, Appellant "was permitted to ask questions [if] he was unclear about anything that was stated to him, which he made sure to ask, and there was nothing ambiguous about the trial court's verbal order." *Id.* The court found that Appellant's statement during the September 5, 2019 hearing did not exhibit a lack of understanding on his part. Rather, his testimony "actually shows that he does, in fact, understand that he is not permitted to speak about the grand jury investigation as he states, 'I wouldn't do that,' in response to being explicitly told not to speak about the

grand jury investigation." *Id.* We agree with the trial court that the order was sufficiently definite, clear, and specific, satisfying the first prong of the test. Further, it is unquestioned that Appellant had notice of the order, as reflected in his statement that he would not speak about the investigation, satisfying the second prong.

With respect to the act being volitional and the contemnor's wrongful intent, this Court has held that "[w]rongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful." *Stewart v. Foxworth*, 65 A.3d 468, 472 (Pa. Super. 2013) (quoting *Himes v. Himes*, 833 A.2d 1124, 1126 (Pa. Super. 2003)). "It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions of criminal contempt." *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (emphasis in original).

Here, the trial court recognized that "[w]rongful intent can be inferred if the [Appellant's] act had substantial certainty of being in violation of the order." *Id.* at 15 (citing *Brumbaugh*, 932 A.2d at 110). Further:

> [Appellant] knew that by recording the video and mentioning the grand jury investigation that he was in direct violation of the September 5, 2019 order, yet he chose to release the video on his website anyway. [His] assertion that he recorded and released the video on his website as some sort of defense to his pending

- 17 -

case holds no persuasiveness as it was the wrong forum. [He] should have presented evidence during trial of his pending case, not posting a video publicly on his website, which instead appeared retaliatory towards the Commonwealth or the police department and indicated wrongful intent on [Appellant's] part.

*Id.* (citation to notes of testimony omitted). Not only does his conduct support the conclusion that he acted with wrongful intent, but also his suggestion that he released the video as part of his defense confirms that his conduct was volitional.

Viewing the evidence in a light most favorable to the Commonwealth, we agree that the evidence was sufficient for the trial court, as factfinder, to conclude that every element of the crime of indirect criminal contempt was established beyond a reasonable doubt. Appellant's fourth issue fails.

Again, "when reviewing a contempt conviction, much reliance is given to the discretion of the trial judge" and "[w]e will reverse a trial court's determination only when there has been a plain abuse of discretion." *Lambert*, 137 A.3d at 1226 (citations omitted). Finding no "plain abuse of discretion" in the trial court's determination, we shall not disturb it.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: *9/8/2022*

- 18 -