J-S12014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| KELLY PRESSLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN PRESSLEY | : | |
| | : | |
| Appellant | : | No. 1559 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 31, 2022,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): 2022-CV-05903-AB.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED JUNE 13, 2023**

Appellant Steven Pressley appeals from the judgment of sentence following his conviction for indirect criminal contempt, pursuant to the Protection From Abuse (PFA) Act. **See** 23 Pa.C.S.A. §§ 6102-6122. The Dauphin County Court of Common Pleas determined that Appellant violated a temporary protection order when, after receiving notice of his eviction, Appellant re-entered the home to retrieve forgotten items. The trial court imposed a $300 fine. After review, we affirm.

The facts are largely uncontested. Kelly Pressley obtained a temporary PFA order that went into effect on August 2, 2022. The temporary order forbade Appellant from contacting Ms. Pressley, and it directed Appellant to vacate their shared residence. An official from the Dauphin County Sheriff's

_____

[*] Retired Senior Judge assigned to the Superior Court.

Department served Appellant with the order and gave him an hour to retrieve any necessary belongings. Kelly Pressley was not at the residence at the time. Appellant put his belongings in a duffel bag and left.

Within an hour of the eviction, however, Appellant returned to the residence, ostensibly to retrieve his medication that was located in the refrigerator and in a Styrofoam cooler in the garage. Appellant's presence was observed by Gary Petrewicz, the father of Ms. Pressley, who had gone to the residence to cut the grass. Mr. Petrewicz noticed Appellant's vehicle and that Appellant was in the garage. Mr. Petrewicz was aware of the temporary PFA order, so he called Ms. Pressley to inform her of Appellant's presence; Kelly Pressley then called the police. Mr. Petrewicz decided to avoid confrontation, so he circled the block to leave. By the time he turned around, Appellant had left. A Lower Paxton Township Police Officer arrived at the residence and spoke to Mr. Petrewicz and Ms. Pressley. The officer contacted Appellant, who admitted that he only returned to grab a few items, but that he thought he was allowed to do so. At no point did Appellant have contact with Ms. Pressley.

The medication that Appellant sought to retrieve was for diabetes, chronic pancreatitis and blood clots.[1] Notably, however, Appellant neglected to retrieve at least some of the medication, which was the sole basis for his return to the home. Ms. Pressley testified that when she came home, she

_____

[1] At the contempt hearing, the trial court accepted Appellant's position that the medication was "life-saving" medication.

noticed that some of Appellant's medication was gone but that the Styrofoam cooler containing his other medication was still in the garage. Moreover, Appellant evidently removed Ms. Pressley's medication in addition to his own. The trial court did not render an explicit finding as to whether Appellant's removal of Ms. Pressley's medication was accidental or purposeful; but the court seemingly accepted the possibility that Appellant took Ms. Pressley's medication by mistake. Eventually, Appellant received the rest of his medication when Ms. Pressley gave them to Appellant's aunt and uncle.

At the contempt hearing, Appellant testified that after he was served, he was only given 30 minutes to collect his belongings – not an hour. Appellant claimed that in his haste, he only put clothes in a duffel bag but not his medication. He testified that he went back home an hour later, for approximately 90 seconds. At the end of the hearing, the trial court determined that Appellant was guilty of indirect criminal contempt. The court imposed a $300 fine.

Appellant timely filed this appeal. Both Appellant and the trial complied with Pa.R.A.P. 1925. He presents two issues for our review:

1. Was there insufficient evidence to prove beyond a reasonable doubt that Appellant acted with "wrongful intent" when his action was to return home to collect his medication and nothing else, and the [C]ommonwealth provided no evidence of threat, force, or violence?

2. Did the trial court err as a matter of law in not considering the violation *de minimus* when the harm, collecting his required medication, was so minor as to constitute an annoyance rather than a full criminal act?

Appellant's Brief at 6.

We address these issues in accordance with our well-settled standard of review:

> Our standard of review in assessing whether sufficient evidence was presented to sustain [an a]ppellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.
>
> In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa. Super. 2022) (citations omitted).

The PFA Act permits a court to hold an individual, who is subject to a protection order, in contempt of that order and to punish the defendant in accordance with the law. *See* 23 Pa.C.S.A. § 6114(a). To establish indirect criminal contempt, the Commonwealth must prove four elements:

1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited;

2) the contemnor had notice of the order;

3) the act constituting the violation must have been volitional; and

4) the contemnor must have acted with wrongful intent.

*Boyer*, 282 A.3d at 1172 (citation omitted).

At the contempt hearing, Appellant conceded that the Commonwealth proved the first three elements – *i.e.*, that the temporary PFA order was clear about Appellant's eviction; that he had proper notice of the order; and that he committed a volitional act when he returned to the residence. However, Appellant maintained, then and now, that he did not act with the requisite wrongful intent. Thus, he concludes the trial court abused its discretion when it determined that the Commonwealth satisfied the fourth prong of the indirect criminal contempt analysis.

This Court has held that "[w]rongful intent will be found where the contemnor knows or reasonable should be aware that his conduct is wrongful." *Stewart v. Foxworth*, 65 A.3d 468, 472 (Pa. Super. 2013) (citation omitted). "[W]rongful intent can be inferred if the [appellant's] act had substantial certainty of being in violation of the order." *Boyer*, 292 A.3d at 1172 (citations omitted). "It is imperative that trial judges use common sense and consider the context of the surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions of criminal contempt." *Commonwealth v. Haigh*, 874 A.2d 1174,

- 5 -

1177 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (emphasis original).

Appellant argues that it was his intent to obtain the necessary medication, as quickly as possible. He argues that it was never his intent to contact or intimidate Ms. Pressley, or otherwise circumvent the temporary PFA order. Appellant notes that he made no contact with Ms. Pressley, and that she would not have known of his presence had she not been informed by Mr. Petrewicz. Appellant also cites case law where this Court determined that an alleged contemnor did not act with wrongful intent, even though the individual actually contacted the protected party. **See** Appellant's Brief at 13-14 (citing e.g., **Haigh**, **supra**). Thus, according to Appellant, his conduct was even more innocuous, because he had no contact with the protected party.

To resolve his claim, we first note the trial court's determination that Appellant's testimony was not credible:

> Even if [Appellant] did not fully understand what he was able to do after his eviction, he could have exercised reasonable caution and chose to contact the Sherriff's Department or the Lower Paxton Police to gain their assistance rather than taking matters into his own hands.
>
> […]
>
> [T]his court finds [Appellant's] demeanor during the hearing was less than credible. His appearance, tone, and demeanor throughout the hearing was insincere. [Appellant] was so concerned that he needed the contents of the Styrofoam container in the garage that he re-entered the dwelling through the garage and forgot to get the container. This seems dubious.

Trial Court Opinion (T.C.O.), 11/18/22, at 3.

In addition to the trial court's finding that Appellant was not credible, we must also note Appellant's admission during cross-examination that he knew he was not allowed back into the residence:

> Deputy D.A.: And you left without all of your medication again?
>
> Appellant: I did not – again, I did not have enough time to gather all of the medication.
>
> Deputy D.A.: I'm talking about the second time you returned, without sheriffs or anyone there.
>
> Appellant: Right. I grabbed -- I walked right by the box that had just come in 'cause I didn't know how long I was gonna have to be away from my own house. And I went up and I grabbed some stuff out of the bathroom, looked in the fridge, grabbed what I saw in there, and ran out because **I knew I was not supposed to be there.**

N.T., 8/31/22, at 35 (emphasis added).

Appellant's admission is a contradiction from his prior testimony that he was unaware he could not re-enter the home. Given this testimony, coupled with Appellant's demeanor at trial, the court determined that Appellant was aware that his conduct was wrongful, and that he knew his reentry would have been a violation of the temporary order. *See Stewart*, *supra*; *see also Boyer*, *supra*. For these reasons, we conclude that the Commonwealth

provided sufficient evidence that Appellant acted with wrongful intent, thereby satisfying the fourth prong of the indirect criminal contempt analysis. Appellant's first issue is without merit.

Next, Appellant argues that even if the Commonwealth satisfied the four-pronged contempt analysis, his conviction cannot stand, because his violation was *de minimis*.[2]  Appellant relies on the Crimes Code's prohibition on the prosecution of *de minimis* offenses.  **See** 18 Pa.C.S.A. § 312.  The purpose of this statute "is to remove petty infractions from the category of criminal conduct."  18 Pa.C.S.A. § 312 – Comment.  Section 312 provides:

> **General rule.--**The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> > (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
> >
> > (2*) **did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or**
> >
> > (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a) (emphasis added).

_____

[2] We evaluate a trial court's ruling to not dismiss an infraction as *de minimis* for an abuse of discretion. **Commonwealth v. Lutes**, 793 A.2d 949 (Pa. Super. 2002).

On appeal, Appellant maintains that his conduct – *i.e.*, his reentry of the home for medication – was not threatening, nor was his conduct the "evil sought to be prevented" by the Legislature's criminalization of a PFA order violation. **See** Appellant's Brief at 20 (citing 18 Pa.C.S.A. § 312(a)(2)).

For support, Appellant cites the trial court's rationale for its decision, which it announced from the bench at the end of the proceeding. There, the court seemingly acknowledged that Appellant's motivation for returning to the residence was for medication, but it still found Appellant guilty of indirect criminal contempt.

> The Court: […] I certainly understand why you went back, why you went there to get your stuff. There would have been other ways to go about it. I mean, you knew you had an order. You weren't supposed to be in contact with her.
>
> Going back to the residence yourself, by yourself, was probably not the smartest thing to do. And again, I don't know what your health circumstances were at the time, but it sounded to me like you had at least enough meds to get you by.
>
> ***I could have found you not guilty if you texted her and said, hey, put the Styrofoam box out by the mailbox, I'll swing by and get it.*** […].

N.T. at 39 (emphasis added).

Appellant cites these statements for the proposition that the trial court acknowledged his offense was *de minimis*. Moreover, Appellant reasons that, had he texted Ms. Pressley per the court's suggestion, then he would have

been in direct violation of the temporary order. By contrast, he maintains that his brief reentry would have left Ms. Pressley unaware of his presence, but for the fact that Mr. Petrewicz happened upon him. Appellant concludes that if texting Ms. Pressley would have been *de minimis*, then surely his reentry without contacting Ms. Pressley should have been *de minimis* as well.

Notwithstanding the trial court's comments at the end of the proceeding, the court explained in its Rule 1925(a) opinion why Appellant's violation was not *de minimis*. The court noted that Ms. Pressley was granted a PFA order with an eviction component, so she could feel safe in her home. **See** T.C.O. at 4. The trial court determined that when Appellant reentered the home, he demonstrated to Ms. Pressley that he was willing and able to enter her space, in total disregard for the temporary PFA order. The court reasoned that the effect of Appellant's actions "severely limited Ms. Pressley's sense of safety and security and undermined an integral purpose" of the temporary order. **Id.**

We are satisfied by the trial court's explanation in its Rule 1925(a) opinion. The effect of Appellant's violation caused Ms. Pressley to feel unsafe in her own home. Indeed, this was the type of "harm" or "evil" the Legislature sought to prevent when it authorized the filing of indirect criminal contempt charges for violations of PFA orders. **See** 18 Pa.C.S.A. § 312(a)(2); **see also** 23 Pa.C.S.A. § 6114 ("Contempt for violation of order or agreement"). When the trial court told Appellant that it could have found him not guilty had he texted Ms. Pressley, the trial court merely posited that this hypothetical text

message violation would have been different than his reentry violation, insofar as a text message might not have caused the same harm as the re-entry.[3]

Moreover, we do not subscribe to Appellant's characterization that he was convicted for retrieving his life-saving medication. Notwithstanding the trial court's statements made to Appellant at the end of the trial, the court still had reservations about Appellant's reason for going back to the home. The court found it "dubious" that Appellant returned for medication, then neglected to retrieve his medication, but then somehow managed to take Ms. Pressley's medications instead. *See* T.C.O. at 3.

The trial court's hesitancy is significant, because it speaks to the nefarious, yet subtle nature of PFA violations, generally. To be sure, not every violation is tantamount to indirect criminal contempt. For instance, in **Haigh**, 874 A.2d at 1176, a criminal defendant violated the PFA order when he asked his wife (the protected party) for any updates about her cancer prognosis. The defendant was aware of the no-contact provision, but thought he could speak to the wife, while they were in a courtroom waiting for the hearing to begin; indeed, the defendant was shackled when he addressed the wife. In addition to these facts, we noted that the wife testified she did not feel threatened. **Id.** at 1178. We vacated the sentence, in part because the infraction was both *de minimis* and non-threatening. **See id.** (emphasis added).

---

[3] Even then, the trial court did not say that it **would** have found Appellant not guilty, only that it **could**. N.T. at 39

- 11 -

The circumstances of *Haigh* aside, courts are also aware that not every minor infraction is innocent. It is not unusual for a contemnor to disguise the violation in such a way that only the protected party would perceive the underlying threat. *See e.g., Lewis v. Lewis*, 234 A.3d 706, 709 (Pa. Super. 2020) (observing the trial court's finding that the appellant "had been playing the [PFA] system, using the [court of common pleas] as one tool in furtherance of his very calculated, complex, web of domestic violence, control and intimidation against [the protected party]."). Whether the PFA order violation is excusable or egregious often turns on the credibility of the witnesses, which is directly in the purview of the trial court.

In essence then, what Appellant seeks in his second appellate issue, is for this Court to re-weigh the testimony and substitute our judgment for that of the trial court. This does not comport with our standard of review. *Boyer*, 282 A.3d at 1171. Instead, we must view the evidence in a light most favorable to the verdict winner, which was the Commonwealth in this case. *See id.* Upon such review, we conclude that the trial court did not abuse its discretion when it determined that Appellant's violation was consequential, and not "too trivial to warrant the condemnation of conviction." *See* 18 Pa.C.S.A. § 312(a)(2).

In short, we conclude that the Commonwealth provided sufficient evidence that Appellant acted with wrongful intent when he knowingly violated the temporary PFA order. We conclude further that the trial court did not

abuse its discretion when it determined that Appellant's violation was not *de minimis.*

Judgment of sentence affirmed.

Judge Colins joins the Memorandum.

Judge McCaffery concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/13/2023