**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NAPHTALI ISHMEL CARTER | : | |
| | : | |
| Appellant | : | No. 1695 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 21, 2023
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-MD-0000799-2023

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: OCTOBER 16, 2024**

Naphtali Ishmel Carter ("Carter") appeals from the judgment of sentence following his conviction of indirect criminal contempt ("ICC")[1] for a violation of a protection from abuse ("PFA") order.[2]  After careful review, we affirm.

We take the underlying facts and procedural history from the trial court's opinion and our review of the certified record.

Carter and the protected party under the PFA order are the parents of a young child.  At trial, the parties stipulated to the entry of both the temporary

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 23 Pa.C.S.A. § 6114(a).

[2] **See** 23 Pa.C.S.A. §§ 6101–6122.

and final PFA orders. The final order provided, in relevant part, that Carter "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" the protected party. Final PFA Order, 1/24/23, at ¶1. The PFA order also prohibited Carter from "having **ANY CONTACT** with [the protected party] . . . either directly or indirectly, at any location" and from contacting the protected party "by telephone or by any other means, including through third persons." *Id*. at ¶4 (emphasis in original). The PFA order permitted Carter to have "non-threatening, non-harassing" contact with the protected party to arrange for visitation with the minor child. Order of Court, 1/25/23, at ¶1.

The trial court explained the events which led to the ICC proceedings:

> At the ICC hearing, the protected party's attorney, Mr. Thomas Clark, Esquire ["Attorney Clark"], testified that on November 9, 2023, he represented the protected party in a custody hearing (involving [Carter] and the protected party) before another judge in the Cumberland County Courthouse. While the judge took a recess before making a ruling in the custody matter, [Attorney] Clark said [Carter,] who represented himself in the custody matter, did make a statement to the effect of, you're going to sleep well tonight, meaning me, she's not going to sleep well, something to that effect. I immediately, I said, sounds like that's a threat. . . . [He] then did walk that back. When I said that sounds like a threat, he did walk back the statement saying, well, here's what I meant by that.[3]
>
> After the hearing concluded, [Carter] left the courtroom before [Attorney] Clark, his co-counsel (Ms. Alex Everett, Esquire ["Attorney Everett"]), and the protected party. After at least 10 minutes had passed since [Carter] had left, [Attorney] Clark asked the deputy sheriffs if they were "safe" to leave, the deputies

---

[3] These statements were not the basis for the ICC proceedings.

- 2 -

informed him that [Carter] had left the building, and the two attorneys and the protected party left the courthouse together. Because he had "concern," given the PFA [order] and "the history," [Attorney] Clark intended to walk his co-counsel and the protected party to their respective vehicles.[4] [Attorney] Clark described the . . . events that transpired as the three of them walked down the street, not yet a block away from the courthouse, which formed the basis of the PFA violation.

Trial Court Opinion, 2/15/24, at 2-3 (capitalization regularized, footnotes omitted, footnotes added).

Attorney Clark explained as they were walking, he was pushed or shoved in the back. *See* N.T., 11/21/23, at 7. Carter then leapt in front of the group, which included the protected party. *See id*. at 8. He began making threatening comments to the effect of "what are you afraid of." *See id*. Attorney Clark told the women they should run, and as the trio began to move away, Carter followed and continued to taunt them. *See id*. at 8-9.

The trio moved back toward the courthouse and attempted to enter a coffee shop. *See id*. at 9. An agitated Carter tried to follow them into the shop and again made physical contact with Attorney Clark, who told him to leave. *See id*. Attorney Clark entered the coffee shop, pulled the door shut and held it against Carter, while Attorney Everett telephoned the police. *See id*. Carter then ran off and the trio went back to the courthouse. *See id*. at 10-11.

_____

[4] Attorney Clark testified that Carter was not happy with the custody court's ruling. *See* N.T., 11/21/23, at 15.

- 3 -

The protected party confirmed Attorney Clark's testimony, saying Carter came up to them from behind and shoved Attorney Clark. *See id*. at 17. She explained Carter was saying things to Attorney Clark, who was responding, and Carter followed the group as they attempted to go back to the courthouse. *See id*. The protected party testified she was crying, upset, and "in shock." *Id*. at 18. The protected party testified she had previously planned to ask leave to withdraw the PFA order. *See id*. at 18-19.

The trial court found Carter guilty of ICC and immediately sentenced him to six months of supervised probation. This timely appeal followed.[5]

On appeal, Carter raises the following issue for our review:

Was there sufficient evidence presented at trial for the court to find [Carter] guilty of [ICC]?

Carter's Brief at 5 (capitalization regularized, bolding omitted).

Carter's issue implicates the sufficiency of the evidence of ICC. In considering a sufficiency of the evidence challenge, the Superior Court reviews evidence and all reasonable inferences from the evidence as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact[]finder unless the evidence is so weak

_____

[5] Carter and the trial court complied with Pa.R.A.P. 1925.

and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-10 (Pa. Super. 2007) (citations and quotation marks omitted).

"[M]uch reliance is given to the discretion of the trial judge[ ]" when reviewing a conviction for contempt. *Commonwealth v. Boyer*, 282 A.3d 1161, 1167 (Pa. Super. 2022) (citations omitted). Because of this, our review is limited to whether the facts support the trial court's decision. *See Boyer*, 282 A.3d at 1167. A reversal is only appropriate "where there has been a plain abuse of discretion." *Id*.

ICC occurs when a person violates an order or decree given by a court outside of the presence of the court. *See Boyer*, 282 A.3d at 1163 n.1. To establish ICC, the Commonwealth must prove four elements: (1) that the court's order was sufficiently definite, clear, and specific, and left no doubt in the contemnor's mind as to the prohibited conduct; (2) the contemnor had notice of the order; (3) the act constituting the violation was volitional, not accidental; and (4) the contemnor acted with wrongful intent. *See Brumbaugh*, 932 A.2d at 110.

Carter argues the evidence failed prove the first and fourth elements of ICC, because the order was not specifically clear and his specific intent was not wrongful. *See* Carter's Brief at 14.

Carter waived his first claim arguing language of the PFA order was not sufficiently clear and specific. In his Rule 1925(b) statement he stated, "[t]he Commonwealth failed to present evidence sufficient to demonstrate wrongful intent, or a volitional act directed toward the protected party."[6] Concise Statement of Errors Complained of on Appeal, 12/22/23, at 1 (unnumbered). Carter failed to allege the language of the PFA order was not sufficiently clear and specific. *See id*.

"[T]he Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that *the trial court judge may be able to identify the issues to be raised on appeal*[.]" *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018) (emphasis added). Here, Carter raised a specific challenge to two of the four-element test: 1) volitional act; and 2) wrongful intent. *See* Concise Statement of Errors Complained of on Appeal, 12/22/23, at 1 (unnumbered).

The trial court addressed the identified wrongful intent and volition claims in its 1925(a) opinion. *See* Trial Court Opinion, 2/15/24, at 5-8. It understandably did not address Carter's vague/unclear language in the PFA

---

[6] In his brief, Carter now concedes the Commonwealth proved his acts were volitional. *See* Carter's Brief at 14.

challenge as Carter first raised it on appeal. Because Carter failed to properly preserve this argument, it is waived. *See Vurimindi*, 200 A.3d at 1038; Pa.R.A.P. 302(a).

Carter next argues the Commonwealth did not prove he "acted with the specific malicious intent required for a conviction of contempt." Carter's Brief at 16. Carter concedes he had "wrongful intent" but claims he intended to harass Attorney Clark, not the protected party. *See id*.

In declining relief on this claim, the trial court explained:

[Carter's] contact with the protected party constituted, at minimum, direct or indirect contact, in violation of the PFA order. The Commonwealth's evidence established that [Carter] was lying in wait for the group, which included the protected party, outside of the courthouse, notwithstanding their attempt to put distance between themselves and [Carter] after the custody hearing. The suggestion that [Carter] could not be in violation of the no-contact provision of the PFA order because he directed his aggression toward [Attorney] Clark struck [the court] as both inaccurate and of little moment here. There could be no doubt that [Carter] was aware the protected party was present, walking alongside her attorneys, when [Carter] pushed [Attorney] Clark from behind, jumped in front of the three of them, and aggressively asked, "what are you afraid of?" and "why are you running?" which forced the trio to retreat from him. If [Carter] may use the fact that at least one more person was present in addition to the protected party in order to shield himself from violating the PFA order, ***which began with pushing a member of the protected party's group*** before continuing to terrorize them, the [PFA] Act would leave much to be desired in terms of what protection it actually offers. [The court was] similarly unmoved by the fact that when the protected party and her attorneys "split up," [Carter] focused his contact on [Attorney] Clark in the doorway of the coffee shop, as the fact remained that [Carter] had jumped out in front of all three of them to initiate contact as they were walking in a row together. The PFA order in effect here prohibited indirect contact with the protected party. [Carter's] actions toward the

group clearly were meant to threaten all present, either directly or indirectly.

Trial Court Opinion, 2/15/24, at 5-6 (capitalization regularized, footnote omitted, emphasis in original).

The trial court additionally rejected Carter's assertion that his contact was a continuation of his dispute with Attorney Clark in the courtroom, rather than prohibited contact with the protected party. **See id**. at 6-7. The court found Carter's "threatening comments" about Attorney Clark there "did little to help" him because those earlier remarks demonstrated Carter "was angry and threatening both the protected party and [Attorney] Clark, which strongly supports the finding that [Carter] acted with "wrongful intent" directed at, but not limited to, the protected party on the street outside the courthouse." **Id**. The trial court pointed out although Attorney Clark was not a protected party under the PFA, he was not a random individual but instead protected party's attorney in a contested custody proceeding. **See id**. at 7. The court explained conduct toward Attorney Clark, who was with the protected party, was inextricably intertwined with conduct toward the protected party. **See id**. The trial court concluded:

> [c]ommon sense dictates that [Carter] intentionally made contact with the protected party when he attacked her attorney on the street following their custody hearing as her attorney walked her to her car, before jumping in front of them and making threatening comments as they tried to retreat. **See Commonwealth v. Beech**, 237 A.3d 1063 (Pa. Super. 2020) (unpublished decision cited for persuasive value) (finding that "common sense and the consideration of surrounding factors clearly support[ed] the trial court's conclusion" that the defendant made contact, with

- 8 -

wrongful intent, with the protected party where immediately following an ICC hearing, the defendant approached the protected party and [a police officer] walking her to her car outside [a] courthouse and asked the officer questions and used vulgarity). Indeed, such evidence shows that [Carter] was demonstrating to the protected party that he could threaten and scare her even when other persons were present. Such conduct is exactly what a PFA order seeks to protect against.

Trial Court Opinion, 2/15/24, at 7-8 (capitalization regularized).

We find no error in the trial court's ruling. The evidence showed Carter, angry about the outcome of the custody hearing, lay in wait for the protected party and her attorneys, shoved one of the attorneys, and followed the group while making threatening remarks. Carter's actions manifested his malicious intent to intimidate the protected party as the trial court found, and were even more aggressive than those which we found violated a PFA order in **Beech**.[7] The trial court, sitting as the finder-of-fact, credited the Commonwealth's version of the events, while rejecting Carter's argument that his actions were directed at Attorney Clark, not the protected party. **See** Trial Court Opinion, 2/15/24, at 7-8. We discern no plain abuse of discretion as the facts support the trial court's decision. **See Boyer**, 282 A.3d at 1167. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[7] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2024