J-A20029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

ZACHARY A. GORSLINE : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHELLE MCMINN :
:
Appellant : No. 1591 MDA 2022

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Cumberland County
Domestic Relations at No: 00429 S 2020/PACSES 366300403

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: SEPTEMBER 20, 2023**

Michelle McMinn (Appellant) appeals from the order entered after the trial court found her in indirect criminal contempt (ICC) of a prior court order, and sentenced her to serve one week in jail.  We affirm.

On August 18, 2020, Zachary A. Gorsline (Plaintiff), filed a complaint for child support of the parties' minor child, who was born in 2007.  The trial court detailed the protracted procedural history:

> [Plaintiff's] complaint initially resulted in an order for child support on the part of [Appellant] in the basic monthly amount of $187.00.  Interim Order of Court (hereinafter the "Support Order"), 9/16/20.  Plaintiff filed a petition for contempt on October 29, 2020, based on [Appellant's] failure to pay on the Support Order.  On November 16, 2020, [Appellant] appeared with counsel [at a hearing] on the petition for contempt, and the matter was continued.  On December 3, 2020, [Appellant] appeared again on the petition for contempt for nonpayment of child support, and the

_____

[*] Former Justice specially assigned to the Superior Court.

case was continued after her counsel indicated she had an appointment the next day.

On December 17, 2020, [Appellant] appeared via videoconference after she waived her right to be physically present in court due to [] issues related to COVID-19. After [Appellant] indicated that she had been referred for an MRI scheduled on January 6, 2021, the matter was again continued and rescheduled for January 14, 2021. On January 14, 2021, [Appellant], after providing documentation showing that she was disabled, had her hearing continued to February 25, 2021, via Zoom. [Appellant] was notified that at the hearing[,] she must provide documentation from her doctor's appointment on February 23, 2021, and that such documentation must include her doctor's opinion on her ability to return to work.

On February 24, 2021, [Appellant] filed her petition for modification of an existing support order, which sought termination of the September 16, 2020, order and claimed [Appellant had] received a letter from her therapist which said [Appellant] cannot work.

On February 25, 2021, the court issued an order stating that the parties had agreed to continue the hearing on the petition for contempt and that [Appellant] had a modification conference scheduled for March 18, 2021. Following the modification conference, the court set [Appellant's] financial obligation to zero, effective [] December 15, 2020, because she was unable to pay, had no known income or assets[,] and there was "no reasonable prospect that [Appellant] will be able to pay in the foreseeable future." … On June 25, 2021, the court affirmed the March 18, 2021, order as a final order, based upon the [] hearing officer's report and recommendation. At the support hearing, [Appellant] produced an excuse from Dr. Deluca stating that [Appellant] became physically unable to work on the date of her hip surgery, April 5, 2021. However, [Dr. Deluca] expected [Appellant] to be physically able to return to work by August 12, 2021.

Trial Court Opinion, 1/11/23, at 2-3 (some citations omitted; footnote moved

to body; some capitalization modified).

On August 19, 2021, Plaintiff filed a petition for modification of the support order. Plaintiff claimed the "excuse" from Dr. Deluca was only "valid" until August 12th or 13th. Petition for Modification, 8/19/21, at 2. The trial court scheduled a support conference for October 15, 2021. The trial court explained that thereafter:

> On October 15, 2021, based on information presented during [the] support conference, the court ordered that [Appellant's] monthly support obligation be "$0.00 from August 19, 2021, until November 14, 2021," and that her support obligation increase to $187.00 per month on November 15, 2021, "with $20.00 per month arrears payment." … A hearing on Plaintiff's petition for modification was held by the support hearing officer on December 22, 2021. Following the hearing …, the support hearing officer filed a report and recommendation on January 13, 2022, in which he concluded [Appellant's] claim of an inability to work was no longer tenable. The court signed an order dated January 13, 2022, establishing a monthly support payment of $144, effective August 18, 2021.
>
> … On January 28, 2022, [Plaintiff filed] a petition for contempt for failure to pay child support … against [Appellant]. On February 1, 2022, [Appellant] filed an exception to the support master's report and recommendation. On March 2, 2022, the contempt hearing was continued again, and [Appellant] was directed to appear for a hearing on the petition for contempt on March 24, 2022. The contempt action was rescheduled numerous times awaiting the disposition of the exceptions. On September 21, 2022, [the trial court entered an opinion and order] dismiss[ing] the exceptions, and made the January 13, 2022 [support order] a final order. The petition for contempt was scheduled for a hearing on October 13, 2022. On October 13th, the parties requested another continuance. The court ordered [Appellant] to "obtain and maintain sufficient wage attachable employment by November 10, 2022. Failure to abide with this condition will result in criminal contempt charges being filed against her."

Trial Court Opinion, 1/11/23, at 4-5 (some capitalization modified).

The trial court held a hearing on Plaintiff's petition for contempt on November 10, 2022. The court explained that at the hearing,

> the Commonwealth reminded the court that it alerted [Appellant] that if she was going "to continue to aver her total disability[,] she must provide documentation and testimony by the physician who completes the Physician's Verification Form." N.T., 11/10/22, at 4. Counsel for [the Cumberland County Domestic Relations Office (CCDRO)] … stat[ed] that "on October 20, 2022, [Appellant] submitted a physician's form for the first time since this [case] was established, completed by Christina Wargo [(Ms. Wargo)], Certified Registered Nurse Practitioner of Penn State Medical Group [] in Carlisle." *Id.* The physician's form []names four mental health conditions[] and indicates [Appellant] has ongoing disability and an inability to work dating back to February 4, 2021, but refers the reader to a different treatment provider, namely Mock-May[]s Associat[es (Mock-Mays), a mental health provider located in Carlisle.[1] *Id.*
>
> Ms. Wargo was present at the November 10, 2022, [contempt] hearing and provided valuable information with respect to the Commonwealth's case. She testified to the following information: Ms. Wargo has been [Appellant's] treating practitioner since 2017. *Id.* at 7-8. She testified that Merakey has diagnosed [Appellant] with bipolar disease, depression, anxiety, and [post-traumatic stress disorder]. *Id.* at 8-9. However, Ms. Wargo does not treat [Appellant] for these conditions. *Id.* at 9. [Ms. Wargo testified, "a]ll initiation and titrating of those medications [to Appellant] is through Merakey." *Id.* Ms. Wargo testified that from the time she met [Appellant, Appellant] has complained of various aches and pains, including ongoing pain in the area around her hips. *Id.* at 10. [Ms. Wargo] noted, however, that [Appellant] was eventually sent to orthopedics, where she continues treatment. *Id.*
>
> On September 8, 2022, the orthopedist recommended physical therapy. *Id.* When Ms. Wargo saw [Appellant] on October 20, 2022, she reaffirmed the recommendation. *Id.* at 11.

---

[1] Ms. Wargo testified Appellant "had seen Mock-Mays, which is now Merakey [Stevens Center]" (Merakey), a mental health provider located in Carlisle. N.T., 11/10/22, at 8.

- 4 -

In fact, after [Appellant's] surgeries on May 20, 2021, and June 16, 2022, the orthopedist recommended physical therapy. *Id.* However, Ms. Wargo said that she could find nothing in the notes indicating that [Appellant] ever followed through with any of the recommendations. *Id.* at 12.

Ms. Wargo also testified that she filled out a physician verification form for [Appellant] on October 20, 2022, and she completed this form with the information that she had at the time. *Id.* at 13, 14-15. On the form, she indicated [Appellant] is not able to work at this time because [Appellant] needs to complete the physical therapy and see how that affects her pain overall. *Id.* at 14, 15. Additionally, Ms. Wargo considered a letter[, which she was unable to produce at the support hearing, that Appellant] provided [Ms. Wargo] from [Appellant's] psychiatry provider, stating that [Appellant] is not in the right mental state to work at this time. *Id.* at 15. However, Ms. Wargo acknowledged that on her own assessment[,] she is not able to draw the opinion that [Appellant] is unable to work. *Id.* at 16. In fact, Ms. Wargo testified that she had three different sets of notes from psychiatry, "and the last one was [July of 2022], which said that [Appellant] was more stable and [Appellant was] found [] to be depressed and tearful at times and suffering from anxiety related to the external stressors in life." *Id.* However, the notes from psychiatry also stated that [Appellant] was a lot more stable than when they first met her. *Id.* Ms. Wargo testified that [Appellant] has progressed over the years and [Appellant's] mental conditions are more stable. *Id.* Additionally, Ms. Wargo recommended [Appellant] "resee psychiatry and get another recommendation from them regarding her ability to work." *Id.* at 17.

Lastly, Ms. Wargo testified that her opinion from seeing and examining [Appellant] is that she does not think a physical job is something [Appellant] could do, but if [Appellant's] mental health [provider] feels [Appellant] is stable enough to work, [Appellant] could find [employment] outside of a physical[ly demanding job]. *Id.*

Trial Court Opinion, 1/11/23, at 5-7 (footnote added; some citations omitted;

footnote citations moved to body and modified; some capitalization modified).

After the hearing, the trial court found Appellant in contempt of the October 13, 2022 order, as Appellant failed to obtain and maintain employment as directed. *See* N.T., 11/10/22, at 33-34. The trial court immediately sentenced Appellant to one week of incarceration in the Cumberland County Prison. *Id.* at 35. The court denied Appellant's request to stay the sentence pending appeal. *Id.*

Appellant timey filed this appeal on November 16, 2022. Appellant and the trial court have complied with Pa.R.A.P. 1925.[2]

Appellant presents three issues for our review:

I.   Whether the Commonwealth presented sufficient evidence to prove [Appellant's] guilt beyond a reasonable doubt, specifically, where the Commonwealth did not establish, or provide any evidence, that [Appellant] volitionally or intentionally refused to comply with the underlying court order to maintain wage-attachable employment[,] as is necessary to find her guilty of indirect criminal contempt?

II.  Whether the trial court abused its discretion by holding [Appellant] in indirect criminal contempt of the October 13, 2022 order by placing the burden of production on [Appellant] to disprove an element of indirect criminal contempt?

III. Whether [Appellant's] due process rights under the Pennsylvania and United States Constitution were violated where the trial court relied upon facts outside the record to make a determination of guilt, and relied on documents provided for other procedures in the case[,] which were not presented at the hearing and which were not part of the record of the indirect criminal contempt case?

---

[2] CCDRO advised it did not intend to file an appellate brief. Correspondence, 4/26/23.

Appellant's Brief at 6-7 (capitalization modified).

Appellant first claims her ICC conviction cannot stand, because "no rational trier of fact could determine that the elements of indirect criminal contempt were met beyond a reasonable doubt." *Id.* at 20 (some capitalization modified). Appellant's claim implicates the sufficiency of the evidence. When reviewing a sufficiency challenge, we consider

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. … Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. … Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Walsh*, 36 A.3d 613, 618-19 (Pa. Super. 2012) (citation and brackets omitted).

Further, when reviewing a challenge to a contempt conviction,

> much reliance is given to the discretion of the trial judge. Accordingly, the appellate court is confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1167 (Pa. Super. 2022) (citations omitted). An "abuse of discretion on appellate review requires [that] the trial court's decision be a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous…."

*Commonwealth v. Smyrnes*, 154 A.3d 741, 760 (Pa. 2017) (citations omitted); *see also id.* ("it is not sufficient that an appellate court might have reached a different conclusion").

"Indirect criminal contempt is committed by obstructive conduct that occurs outside of the court's presence." *Commonwealth v. Stevenson*, 283 A.3d 196, 205 (Pa. 2022). The purpose of ICC is to vindicate the authority of the trial court and punish willful disobedience. *Commonwealth v. Bowden*, 838 A.2d 740, 760 (Pa. 2003). To establish ICC, the Commonwealth must prove four elements beyond a reasonable doubt:

> 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Boyer*, 282 A.3d at 1167 (citations omitted); *Walsh*, 36 A.3d at 619. "Unless the evidence establishes an intentional disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven." *In re Mandell*, 414 A.2d 1013, 1015 (Pa. 1980) (citation omitted).

Here, Appellant concedes "the first two elements of indirect criminal contempt were met." Appellant's Brief at 21.[3] Appellant challenges the trial court's determination that the Commonwealth proved the third and fourth elements discussed in *Boyer*, *supra*. Specifically, she contends:

---

[3] Appellant states she "also did not contest that she had not obtained employment prior to the [contempt] hearing." Appellant's Brief at 21.

[Appellant] did not admit, at any point, that she was volitional in disobeying the order or that she acted with wrongful intent in not obtaining a job. [Appellant] has, from the inception of this case, averred that she was unable to obtain and maintain employment because of multiple disabling medical conditions.

*Id.* at 22. According to Appellant, the "evidence that was produced at the [contempt] hearing by the Commonwealth was virtually nonexistent." *Id.* Appellant argues, "Even with the evidence viewed in the light most favorable to the Commonwealth, it is insufficient for a finding beyond a reasonable doubt." *Id.*

To the contrary, the trial court opined that the Commonwealth presented sufficient evidence to prove all elements of ICC beyond a reasonable doubt. Citing our Rules of Civil Procedure, the trial court reasoned:

"In addition to any other remedy available to the court, the court may order the respondent to obtain employment with income that can be verified and is subject to income attachment." Pa.R.C.P. 1910.25-7. With respect to the court's ability to order incarceration where the respondent willfully fails to comply with such an order, the explanatory comment [to] Rule 1910.25-7 provides, in part, as follows:

> Absent an inability to maintain employment or acquire other income or assets, sanction in the form of incarceration may be imposed by the court to compel compliance and provide an incentive to obey the law. The contempt process, which should be used as a last resort, is necessary to impose coercive sanctions upon those obligors whose circumstances provide no recourse to the court to compel payment or a good faith effort to comply. Appellate opinions have made it clear that an obligor who is in civil contempt cannot be incarcerated without the present ability to fulfill the conditions the court imposes for release. However, the courts also have noted that recalcitrant obligors may be imprisoned for

indirect criminal contempt if afforded the proper procedural safeguards.

*Id.* (Explanatory Comment – 2007).

* * *

The third element necessary to prove indirect criminal contempt requires the act constituting the violation to have been volitional. An act is volitional if it is knowingly made. ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa. Super. Ct. 2007). Here, [Appellant's] willful failure to obtain wage-attachable employment constitutes a volitional act. **This court told [Appellant] she must get a job and if she did not, a contempt petition would be filed against her. Moreover, the procedural history of this case and Ms. Wargo's testimony demonstrates [Appellant's] willingness to ignore the court and her doctor's recommendations**. Ms. Wargo testified that after both of [Appellant's] surgeries, the orthopedist told [Appellant] to attend physical therapy. However, there were no notes that [Appellant] complied with her doctor's recommendations. Furthermore, in September of 2022, the orthopedist again told [Appellant] to attend physical therapy, and despite being in the middle of the civil contempt petition, [Appellant] did not comply. Additionally, if [Appellant] made any attempts to secure employment, consistent with [the trial] court's directive, she would have promptly told her Domestic Relation Officer. **The history of this case and of [Appellant's] unwillingness to follow through with treatment and instruction strongly supports this court's conclusion that she willfully violated the October 13, 2022, order of court.** Accordingly, the third element of contempt has been satisfied.

Trial Court Opinion, 1/11/23, at 10-11, 12 (emphasis added; some capitalization modified).

With respect to the fourth element, *i.e.*, whether Appellant acted with wrongful intent, the trial court explained:

[I]n "making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a

- 10 -

defendant by virtue of the substantial certainty that his [or her] actions will violate the court order." ***Commonwealth v. Reese***, 156 A.3d 1250, 1258 (Pa. Super. 2017) (citations omitted). Here, [Appellant] had notice that she must obtain wage-attachable employment before the November 10, 2022, [contempt] hearing. **Given the length of this support action, and the direct order to obtain a job before the next hearing, [Appellant] was certain that her actions, or lack thereof, would violate the order**.

[Appellant] attempted to rebut the Commonwealth's evidence by showing she was unable to comply with the October 13, 2022, order based on medical advice. However, Ms. Wargo, the nurse practitioner, could not opine that [Appellant] was unable to work, without relying on incomplete medical documents from multiple other medical professionals. [N.T., 11/10/22,] at 12, 17-18. Moreover, Ms. Wargo testified that from her assessment of [Appellant], [Appellant] probably could not handle a physical job, but may be able to handle another type of job once she is reassessed by Merakey. ***Id.*** at 17. [Ms. Wargo] further testified it had been almost a year since Merakey told [Appellant] she could not work, and that is why Ms. Wargo encouraged [Appellant] to get another assessment. ***Id.*** at 18. [Ms. Wargo testified s]he cannot recommend that [Appellant] is able to work because she needs to be re-evaluated. ***Id.*** at 19. Most[] notable was Ms. Wargo's testimony on cross examination, "As a family practitioner, I don't have the specialties in psychology-type work like they do. So I gather the information, and then I depend on them to steer the direction. **But it also takes cooperation, people going back for appointments**. … You know what I mean? Like making sure that they're being reevaluated, that type of thing." ***Id.*** at 21 (emphasis added). **[Appellant] was not cooperating with her treatment plan. Instead, she was relying on outdated opinions to continue with her assertion that she is unable to work.**

Moreover, [Appellant's] failure to obtain employment before the November 10, 2022, [contempt] hearing is considered by the court in the context of her **failure to make a single [child support] payment in 13 months to comply with the child support ordered by the court**. Therefore, considering both the evidence and the context, the wrongful intent element of indirect criminal content is satisfied.

- 11 -

Trial Court Opinion, 1/11/23, at 12-14 (emphasis added; footnote citations moved to body and modified; some capitalization modified).

Our review discloses that the record and law support the trial court's rationale. Contrary to Appellant's claim, the trial court did not abuse its discretion in finding the Commonwealth proved all elements of ICC beyond a reasonable doubt. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth proved Appellant acted with wrongful intent in volitionally failing to comply with the trial court's directives. *Boyer*, *supra*; Pa.R.C.P. 1910.25-7 (Explanatory Comment – 2007) ("sanction in the form of incarceration may be imposed by the court to compel compliance and provide an incentive to obey the law."). Appellant's first issue does not merit relief.

Appellant next argues the trial court abused its discretion in placing the burden of production on Appellant to disprove her ICC. *See* Appellant's Brief at 24-28. According to Appellant, the contempt hearing

> began with the burden on [Appellant]. … [S]he was presumed to be guilty of the contempt and was required to present a defense to disprove the contempt. This guilt was presumed without the Commonwealth presenting any evidence or testimony to support … a *prima facie* case against [Appellant].

*Id.* at 26. Appellant cites *Commonwealth v. Bishop*, 372 A.2d 794 (Pa. 1977), where our Supreme Court stated:

> [A]n accused in a criminal case is clothed with a presumption of innocence and the burden of proof in establishing guilt rests with the Commonwealth. The quantum of proof necessary to satisfy

this burden … never shifts from the Commonwealth to the accused….

*Id.* at 796; Appellant's Brief at 26.

"In a prosecution for criminal contempt, the Commonwealth has the burden of proving every element of the crime beyond a reasonable doubt."

*In re Johnson*, 359 A.2d 739, 742 (Pa. 1976); *In re Mandell*, 414 A.2d at 1015 (same). Instantly, the trial court rejected Appellant's claim, explaining:

> [Appellant] appeared on November 10th for [] indirect criminal contempt, for failure to abide by the court's October 13th order, in that she failed to obtain and maintain employment. Additionally, she was appearing on a petition for contempt for failing to pay support. She was told to bring a physician's verification form and testimony as to her disability as it pertained to her failure to pay. [Appellant] specifically requested that the court hear the testimony on the indirect criminal contempt first. She presented the physician's verification form and the testimony of [Ms. Wargo] because [Appellant] felt she could not abide by the October 13th order in that she still was unable to work. While [Appellant] presented the testimony of [Ms. Wargo], **the court was completely within its discretion to consider her testimony and the weakness of it**. [Ms. Wargo] could not say that from October 13th — November 10th, [Appellant] was not able to work. [Ms. Wargo] said that she would recommend follow up appointments to solidify [Appellant's] belief that she is still unable to work. [Given t]he fact [Appellant] is not following up with professional advice, as evidenced by [Ms. Wargo's] testimony and the support hearing officer's prior findings, the court was well within its discretion to consider that [Appellant] willfully ignored its October 13th order. The court specified in its order that if [Appellant] failed to obtain such employment, criminal contempt charges would be filed against her. Having notice of the court's directive, [Appellant] needed only to show the court that she obtained wage-attachable employment. Upon recognition that [Appellant] failed to obtain the requisite employment, **it was the Commonwealth who had the burden to prove all four elements of indirect criminal contempt, not [Appellant]**. Having determined that the Commonwealth sufficiently proved each element of indirect criminal contempt, the court properly

- 13 -

found that [Appellant] was in contempt of the October 13, 2022, Order.

Trial Court Opinion, 1/11/23, at 15-16 (emphasis added; some capitalization modified).

Again, our review discloses that the trial court's reasoning is supported by the record and the law. Appellant's second issue lacks merit.

In her final issue, Appellant claims the trial court deprived her of due process by considering facts outside the record. *See* Appellant's Brief at 29-38. Appellant cites our decision in ***Ney v. Ney***, 917 A.2d 863 (Pa. Super. 2007), where we confirmed a "trial court may not consider evidence outside of the record in making its determination." ***Id.*** at 866; Appellant's Brief at 31. Appellant emphasizes the "[c]ontempt hearing was presided over by the same judge who had presided over the exceptions hearing for [Plaintiff's] civil case…." Appellant's Brief at 30. Appellant references the trial court's statement in the procedural history section of its Pa.R.A.P. 1925(a) opinion:

> On April 5, 2021, Plaintiff contacted [the Cumberland County] Domestic Relations Conference Officer [assigned to the case via letter (Client Correspondence),] and stated [Plaintiff] believed [Appellant] was "[doctor] shopping" and that she was "willing to say and do anything to get out of supporting our son."

Trial Court Opinion, 1/11/23, at 3 (footnote citation omitted); Appellant's Brief at 32-33. According to Appellant, the "Client Correspondence … has never been provided [to her] counsel." ***Id.*** at 33.

Appellant further claims that because of a breakdown in the trial court's operation, she did not timely receive the September 21, 2022, opinion and

- 14 -

order, which rendered her "unable to properly prepare a defense." *Id.* at 37; *see also id.* at 36. Appellant argues the "lack of access … [Appellant] had to the majority of the record created an impossible hurdle in adequately preparing a defense." *Id.* at 37. Finally, Appellant broadly asserts the trial court deprived her of her constitutional right to confront and cross-examine adversarial witnesses, namely Plaintiff. *Id.* at 34; *see also Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. 2001) ("Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him [or her].").

"As with those accused of any crime, 'one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford.'" *Brumbaugh*, 932 A.2d at 110 (quoting *Commonwealth v. Padilla*, 885 A.2d 994, 996-97 (Pa. Super. 2005)); *see also Godfrey v. Godfrey*, 894 A.2d 776, 785 (Pa. Super. 2006).

> [T]he essential procedural safeguards which are attendant to a criminal contempt proceeding … include: the right to bail, the right to be notified of accusations against him or her, a reasonable time to prepare a defense, the assistance of counsel, and the right, upon demand, to a speedy and public trial before a jury.

*Diamond v. Diamond*, 715 A.2d 1190, 1196 n.10 (Pa. Super. 1998) (citing, *inter alia*, 42 Pa.C.S.A. § 4136 (governing rights of persons charged with ICC)). Furthermore, our Rules of Civil Procedure provide: "No respondent may be incarcerated as a sanction for contempt without an evidentiary hearing before a judge." Pa.R.C.P. 1910.25-5(a).

With respect to due process in criminal contempt, our Supreme Court has stated:

> The Constitution certainly requires that [an] appellant be given fair notice of the charges against him and an opportunity to be heard. But no need exists to fit criminal contempt … into the mold of procedures created for more commonplace offenses. This Court has … recognized that due process is a flexible concept and not one wed to fixed formalities.

***Commonwealth v. Mayberry***, 327 A.2d 86, 91-92 (Pa. 1974) (citations and footnote omitted).

Our review of the record discloses no support for Appellant's due process claim. The trial court afforded Appellant all procedural safeguards attendant to an ICC proceeding. ***See Diamond***, ***supra***. There is also no support for Appellant's claim that the trial court considered evidence outside the record. Assuming, *arguendo*, that it did, such error would be harmless, because the evidence of Appellant's contempt is overwhelming. ***See Commonwealth v. Moore***, 937 A.2d 1062, 1073 (Pa. 2007) ("An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."). Finally, there is no merit to Appellant's claim regarding her rights under the Confrontation Clause; Plaintiff's testimony was not necessary for the trial court to conclude that the Commonwealth proved all elements of ICC beyond a reasonable doubt. Thus, Appellant's third issue does not merit relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2023