2023 PA Super 198

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
MERCHELEYN SHANAE FISHER  :
:
Appellant  :  No. 351 MDA 2023

Appeal from the Judgment of Sentence Entered February 10, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000977-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY KUNSELMAN, J.:  **FILED OCTOBER 11, 2023**

Mercheleyn Fisher appeals from the judgment of sentence entered after she was convicted of disorderly conduct and an equipment violation.[1]  We affirm Fisher's convictions but vacate her sentence and remand for resentencing.

The trial court recounted the evidence at trial:

> Officer Gareck Esposito testified that he was an officer of the South Williamsport Police Department on September 19, 2021.  At approximately 9:00 p.m. . . . that day, he performed a traffic stop [of Fisher] for a window tint violation.  After stopping [Fisher], he tested [Fisher's] window with a window tint reader and found it to be in violation of the Pennsylvania Vehicle Code.
>
> Officer Esposito first observed the violation in the parking lot of a McDonald's restaurant on U.S. Route 15, within the Borough of South Williamsport.  Rather than performing the stop in the McDonald's parking lot, Officer Esposito waited for [Fisher] to leave, whereupon he followed her for a short time and performed the stop on U.S. Route 15 South in Armstrong

---

[1] 18 Pa.C.S.A. § 5503(a)(4); 75 Pa.C.S.A. § 4107(b)(2).

Township, just outside of the Borough. U.S. Route 15 is a busy, non-divided highway at the location of the traffic stop, and the South Williamsport Police Department has clocked motorists travelling through that area at speeds in excess of 70 miles per hour. Officer Esposito stopped [Fisher] there, however, because it was the safest portion of the road for a traffic stop in that area.

Since the shoulder of the road is narrow there and is not even wide enough for one vehicle, he approached [Fisher's] vehicle on the passenger side. Initially, he asked [Fisher] to roll down the back window so he could clear the back of the car, which he could not see otherwise due to the window tint. Once the window was down, he observed two of [Fisher's] children improperly restrained in the back seat.

Thereafter, having cleared the back of the car, he moved to the front window to speak with [Fisher], who was driving the vehicle. He asked [Fisher] to provide her driver's license, automobile registration and proof of insurance. She provided the requested documentation ultimately, but only after arguing with Officer Esposito about whether he had the right to stop her and about his utilization of a flashlight to look into the car which, he explained to her, was to clear the vehicle and assure safety, given the window tint and the darkness outside occasioned by the time of day.

Corporal MacInnis, from the South Williamsport Police Department, soon arrived to provide back up, and he approached [Fisher's] vehicle from the driver's side. Officer Esposito directed [Fisher] to roll down her driver's side window, which she refused to do. The officers observed something between [Fisher's] legs which they feared might be a weapon or contraband. Officer Esposito could not see what it was due to his angle of view, and Corporal MacInnis could not see what it was because of the window tint. After arguing with [Fisher] further about that and other matters, Officer Esposito ordered [Fisher] out of the vehicle because of her noncompliance. [Fisher] refused to exit initially, but did exit on her own after Corporal MacInnis opened her car door.[TCO n.15]

---

[TCO n.15] He did this as an officer safety measure to observe what he could not see due to the window tint. Notwithstanding the officers' safety concerns, the item between [Fisher's] legs turned out to be papers.

From the beginning of the traffic stop, [Fisher] had been on her phone with another person or persons, whom she invited to the traffic stop. Another individual ultimately did arrive, which caused concern regarding the safety of having another vehicle stopped on a busy highway. After [Fisher] was out of her vehicle, Corporal MacInnis directed [Fisher] to surrender her phone, which was in her bra, so she would not invite even more people to the traffic stop. She initially refused despite Corporal MacInnis asking her multiple times. Officer Esposito thereafter detained [Fisher] for non-compliance so that he could proceed safely with the work incident to the traffic stop.

The reason Officer Esposito detained [Fisher] was for her safety, the officers' safety, and the general public's safety. He attempted to put [Fisher] into the back of his vehicle for her safety. Again, she refused initially but complied ultimately. Her phone remained in her bra while she was in the back of the police vehicle until the phone was later removed. While in the back of the police vehicle, [Fisher] was speaking with two people—a male who was at the scene of the traffic stop, and a female who was offering legal advice about the traffic stop. Officer Esposito wanted to secure everyone's safety before addressing [Fisher's] concerns and completing the traffic stop. His safety concerns were exacerbated by the fact that it was dark outside at the time, the vehicle stop was conducted on a shallow shoulder of a busy highway, [Fisher] had invited others who had arrived at the scene, and there were two small children in [Fisher's] vehicle.

Officer Esposito primarily dealt with [Fisher] and tested [Fisher's] window tint because it was his traffic stop. Upon testing her rear window with a device issued by his Department, Officer Esposito confirmed that the window tint only allowed four percent (4%) light to pass through, whereupon he issued [Fisher] citations for window tint violations. Corporal MacInnis was on scene as back up for Officer Esposito, for traffic control, and to tend to [Fisher's] children who were still in the back seat of the vehicle.

The traffic stop should have taken only a short time under normal circumstances, but it ended up taking more than one hour due to [Fisher's] noncompliance and her insistence that a female officer be summoned to search her.[TCO n.16] A female officer was summoned from another Department, and Officer Neeper thereafter arrived on the scene. Officer Neeper ultimately removed the phone from [Fisher's] bra.[TCO n.17]

> TCO n.16 Officer Esposito patted [Fisher] down for weapons when he detained her, which he was permitted to do under the circumstances, despite being a male officer. [Fisher] contended she was being searched, however, and asked for a female officer. Her request was accommodated, even though she was not being searched.
>
> TCO n.17 The officers did not search [the contents of Fisher's] phone; the reason they wanted it was to prevent [Fisher] from directly inviting other persons to the traffic stop, as a safety measure, and not to prevent the public at large from viewing what was happening.

> Officer Esposito's safety concerns about the incident were worsened by the extended time the traffic stop took due to [Fisher's] noncompliance; the three police officers from two different departments whose vehicles were parked along the side of the highway; the additional person(s) summoned to the scene by [Fisher]; [Fisher's] children being in the back of her car for the duration to the traffic stop; and southbound traffic having to move toward the center of a non-divided roadway while northbound traffic was oncoming at high speed as a result of all of the vehicles stopped along the side of the highway. These circumstances were created by [Fisher], and they unnecessarily put [Fisher], her children, the police officers and the general public at risk of death or serious injury.

Trial Court Opinion, 4/20/23, at 5–8.

Following trial, the trial court found Fisher guilty of disorderly conduct and an equipment violation. The court sentenced Fisher to undergo three days of imprisonment, pay a fine, and "complete 24 hours of community service washing police cars at the South Williamsport Police Department." Order, 2/13/23, at 1. It indicated that failure to complete community service could expose Fisher to prosecution for criminal contempt. *Id.* at 1–2.

Fisher timely appealed. Fisher and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Fisher presents two questions for our review:

I.     Was evidence sufficient to convict [Fisher of disorderly conduct]?

II.    Did the Sentencing Court abuse its discretion in the sentencing condition that [Fisher] wash the police cars for the South Williamsport Police Department?

Fisher's Brief at 7.

Fisher's first issue challenges the sufficiency of the evidence to convict her of disorderly conduct. This Court's review follows a well-settled standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023) (quoting *Commonwealth v. Gause*, 164 A.3d 532, 540–41 (Pa. Super. 2017) (*en banc*)).

The elements of disorderly conduct are set forth by statute: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience,

- 5 -

annoyance or alarm, or recklessly creating a risk thereof, [she] creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). The statute aims to protect the public from public unruliness that leads to tumult or disorder, rather than being a "catchall for every act which annoys or disturbs people." *Commonwealth v. Coniker*, 290 A.3d 725, 735 (Pa. Super. 2023) (quoting *Commonwealth v. Mauz*, 122 A.3d 1039, 1041 (Pa. Super. 2015)). A "hazardous" condition "'involves danger or risk' of 'the possibility of injuries resulting from public disorders.'" *Id.* (quoting *Commonwealth v. Roth*, 531 A.3d 1133, 1137 (Pa. Super. 1987)).

Our research has revealed one disorderly conduct case involving a traffic stop: *Commonwealth v. Jones*, No. 829 EDA 2021, 2022 WL 289261, at *2 (Pa. Super. Feb. 1, 2022) (non-precedential decision).[2] Troopers pulled Jones over on Interstate 80 and determined that his vehicle had to be towed. *Id.* at *1. When Jones refused to exit his vehicle, the police closed off the right lane of the busy highway to remove him and arrest him. *Id.*

Jones argued on appeal that the police, not he, created the hazardous condition of the lane closure. *Id.* at *2. This Court rejected that argument: "Simply put, the towing of the vehicle did not cause the lane closure. Rather, the sole cause of the lane closure was [Jones'] refusal to exit the vehicle." *Id.*

---

[2] We cite a non-precedential decision filed after May 1, 2019 for its persuasive value. *See* Superior Court O.P. 65.37(B).

Because Jones' non-compliance caused the hazardous condition, the evidence was sufficient to convict him under Section 5503(a)(4). *Id.*

Here, the trial court described the hazardous condition as "[h]aving multiple vehicles with multiple persons in and around them parked alongside a busy, non-divided highway when vehicles travel by at high speed in both directions." Trial Court Opinion, 4/20/23, at 11. Fisher does not dispute that this condition was hazardous. Rather, she contends that the Commonwealth did not prove that any act of hers caused this hazardous condition. Fisher's Brief at 13–17. She argues that it was Officer Esposito's choice of where to activate his lights that put the participants in the traffic stop at risk of being struck by a fast-moving vehicle. *Id.*

We find the evidence to be sufficient. While Officer Esposito made the initial decision of where to activate his lights, it was Fisher's persistent actions that prolonged the traffic stop over an hour. Fisher refused to roll down her window, open her door, or exit her car. Fisher argued with the officers about the propriety of the stop. Fisher invited other people to the scene. As in *Jones*, these non-compliant acts required the police to prolong the traffic stop along a busy two-lane highway to respond to her and respond to the issues that she created. "[Fisher] turned a routine traffic stop that should have taken mere minutes into an hour-long confrontation with the police [while multiple passing vehicles had to avoid the obstruction]. . . . [T]he escalation of the situation was entirely [Fisher's] fault." Trial Court Opinion, 4/20/23, at 13. Therefore, the evidence was sufficient to convict Fisher of disorderly conduct.

Fisher's second issue is a challenge to the discretionary aspects of her sentence, specifically the term of community service. She argues that the trial court abused its discretion by requiring her to travel several hours away from her home in Philadelphia to wash cars for the South Williamsport Police Department. Fisher's Brief at 17–20.

Fisher has waived this issue. "To preserve issues concerning the discretionary aspects of sentencing, a defendant must raise them during sentencing or in a timely post-sentence motion." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008) (citing *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006), and Pa.R.Crim.P. 720). Fisher did not contest her term of community service either at sentencing or in a post-sentence motion for reconsideration. Therefore, this issue is waived.

However, we may evaluate the legality of Fisher's sentence, including the community service order, *sua sponte*. *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 889 (Pa. Super. 2019) (citing *Commonwealth v. Muhammed*, 992 A.2d 897, 903 (Pa. Super. 2010)). The legislative branch, not the judicial branch, defines the sanctions that may be imposed on a defendant who violates a criminal statute. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Id.* at 891 (quoting *Commonwealth v. Stevenson*, 850 A.2d 1268, 1271 (Pa. Super. 2004) (*en banc*)).

Here, the trial court explained that its order of community service is a restorative sanction with the rehabilitative goal of impressing upon Fisher the

loss that she caused and her responsibility to repair the loss. Trial Court Opinion, 4/20/23, at 13–14. However, it appears that the trial court conflated community service with restitution. *Id.* (citing *Commonwealth v. Wood*, 446 A.2d 948, 950 (Pa. Super. 1982) (describing the purpose of restitution)).

The legislature has provided that a sentencing court may order community service as a condition of probation. 42 Pa.C.S.A. § 9763(b)(3); *see, e.g.*, *Commonwealth v. Gibson*, No. 1600 WDA 2019, 2020 WL 4371323, at *4 (Pa. Super. July 30, 2020) (non-precedential decision) (finding community service to be legal as a condition of probation). The sentencing regulations provide that community service is a restorative sanction, which "when ordered, is imposed as a condition of probation." 204 Pa.Code § 303.14(a)(4). Except for certain circumstances that do not apply here,[3] a sentencing court lacks authority to order community service as a standalone term of a non-probation sentence.

The sentencing court ordered Fisher to undergo a period of confinement, pay a fine, and complete community service. Because this sentence did not include a term of probation, the court lacked statutory authority to order community service. Therefore, Fisher's sentence was illegal, and we will vacate the term of community service. *Pi Delta Psi, Inc.*, 211 A.3d at 891. Mindful that this may disturb the overall sentencing scheme, we vacate the

---

[3] *See* 42 Pa.C.S.A. §§ 9720 (providing for community service as a sentence for criminal mischief) and 9759(c) (allowing an alternative sentence for nonpayment of fines).

entire sentence and remand for resentencing. ***Commonwealth v. Tanner***, 61 A.3d 1043, 1048 (Pa. Super. 2013) (citing ***Commonwealth v. Williams***, 997 A.2d 1205, 1210–11 (Pa. Super. 2010)). Because we vacate on legality grounds and Fisher waived her discretionary-aspects-of-sentencing issue, we do not comment on the trial court's exercise of discretion.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/11/2023