J-A04036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NEIL KHARE | : | |
| | : | |
| Appellant | : | No. 2040 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 2, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-MD-0000896-2023

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED MAY 24, 2024**

Appellant, Neil Khare, appeals from the judgment of sentence imposed following the trial court's finding that he committed indirect criminal contempt ("ICC") of an order issued pursuant to the Protection from Abuse ("PFA") Act.[1] Following review, we remand this matter for the limited purpose of allowing the trial court to amend the sentencing order to reflect that Appellant was convicted of ICC under Section 6114(a) of the PFA Act, 23 Pa.C.S. § 6114(a), and affirm Appellant's judgment of sentence in all other respects.

The trial court summarized the relevant procedural history of this matter as follows:

On March 1, 2021, Marissa Pento obtained a Final [PFA] Order against [Appellant]. The [PFA] Order prohibited [Appellant] from

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.

contacting Ms. Pento and the parties' minor child except for [video] calls with the minor child at 7 pm each night. Custody Orders of October 21, 2021 and February 24, 2023 modified the PFA [Order] by granting [Appellant] supervised visits with the minor child.

On March 22, 2023, [Appellant] was charged with violating the PFA Order. A hearing was held June 2, 2023.

Trial Court Opinion, 7/17/23, at 1 (footnote omitted).

At the ICC hearing, the Commonwealth called the complainant, Pento, who testified that she was previously in a relationship with Appellant and that she and Appellant were the parents of an eight-year-old boy ("Child"). N.T., 6/2/23, at 4. Pento testified that she obtained a PFA order against Appellant on March 2, 2021, following a hearing at which Appellant was in attendance. *Id.* at 4-5; Exhibit C-1. The PFA order provides that Appellant "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Pento or Child. N.T., 6/2/23, at 5-6; Exhibit C-1, at 1. The order further provides that Appellant shall not contact Pento or Child by any means "[e]xcept as provided in Paragraph 5 of this order"; Paragraph 5 in turn provides that Appellant shall have periods of partial supervised physical custody of Child at the office of a supervising agency and daily video calls with Child. N.T., 6/2/23, at 5-7; Exhibit C-1, at 1-3. Paragraph 5 further states that "[a]ny valid custody order entered after the final [PFA] order supersedes the custody provisions of this order." Exhibit C-1, at 3. The order expires on March 1, 2024, and Appellant and Pento signed the order indicating that it "was entered pursuant to the consent of" the parties. *Id.* at 1, 4.

- 2 -

Pento testified that during March 2023, Appellant's attorney contacted her attorney regarding Child attending an April 1, 2023, birthday party for Appellant's four-year-old daughter at Appellant's house. N.T., 6/2/23, at 7, 14, 40. Pento stated that her attorney advised Appellant's attorney that Child would not be attending the party; in addition, the therapist appointed by the family court judge to resolve custody issues was consulted and she also stated that the home visit should not take place. *Id.* at 7-8. Pento testified that Appellant then initiated a series of communications with her regarding the birthday party on the Our Family Wizard application ("OFW"), which was designated by the family court for discussion of custody matters. *Id.* at 8, 11, 35. Pento explained that she regarded some of Appellant's OFW messages as harassing and threatening, which ultimately led her to contact the police. *Id.* at 8-9, 13, 18-21, 23-24.

The court admitted two exhibits at the hearing containing a series of OFW messages between Pento and Appellant during the period of March 7 to March 22, 2023. *Id.* at 11-14, 55; Exhibits C-2, D-2.[2] Appellant's first message on March 7 mentions a previous conference with the judge handling Child's custody case and asked whether Pento would "let [Child] celebrate his religious holidays and see his family in person?" Exhibit C-2, at 1. Appellant then noted that his family would be celebrating the Holi holiday on Saturday,

_____

[2] Appellant and Pento agreed that the screenshots and printouts of the OFW messages admitted at the hearing accurately reflected the messages that were sent via the app. N.T., 6/2/23, at 11-12, 46-47.

March 11 at noon, and that Appellant's daughter's birthday party was on April 1. *Id.* Pento responded the following day that she viewed attendance at Child's sister's birthday party as a violation of the PFA order and thus neither she nor Child would attend; Pento also offered to reschedule Child's video call that was already scheduled for the morning of March 11 to noon so that he could participate in the holiday observance. *Id.* at 2. Notably, the parties' most recent temporary custody order provided that Appellant shall be permitted to conduct video calls with Child on Appellant's religious holidays. Exhibit D-1, ¶ 4.

On March 8, Appellant sent the following message:

That's a bit of a liberal interpretation of the PFA agreement, I suggest you reread it and consult your attorney regarding the custody stipulation. And as you stated, it expires in 357 days. Have you asked [Child] if he would like to celebrate his heritage and see his sister, family and friends? Have you ever considered doing what is best for him. Try to put your insecurities and ego aside.

Exhibit C-2, at 3. Pento responded that same day by advising Appellant to "knock it off" and "[y]ou're harassing me about this now." *Id.* at 4. Pento stated that she would adhere to the letter of the PFA order and instructed Appellant that any further discussion of the matter should be directed to the court-appointed therapist. *Id.* Pento finished the message with: "Now Stop." *Id.* Appellant responded the next day that "[t]his is not harassment" and that he only sought Child's attendance at the birthday party for his "well being" and "best interest." *Id.* at 5.

At 3:13 p.m. on March 19, Appellant sent the following message to Pento: "Is there a reason that the Zoom did not happen today?" Exhibit D-2, at 3. Pento sent a reply approximately 45 minutes later apologizing and offering to do the video call "now." *Id.* Appellant did not respond, and Pento sent two subsequent messages within the next hour regarding her failed attempts to initiate a call and offering a make-up call the following week. *Id.* at 2-3. Appellant did not send a response until March 22:

> I wanted [Child] to see his 89 year old grandfather before he left.
>
> You had previously agreed on OFW to a Zoom conference on 3/19 at 3 pm.
>
> [My attorney] has already typed up his petition, but in an effort to coparent and save the court some time, I will forgo the 3/19 contempt petition if [Child] is able to attend his sister['s] birthday party.
>
> Let me know your thoughts either way by 3/24 5pm.

*Id.* at 2; Exhibit C-2, at 6. Pento responded: "This is what you call co-parenting? Threatening me?"; further messages were exchanged in which Appellant stated that his prior message was an offer of "an olive branch so you can save some money." Exhibit D-2, at 1-2.

Appellant also testified at the contempt hearing. He stated that he never intended to threaten or intimidate Pento during their conversations on OFW. N.T., 6/2/23, at 42. Appellant testified that Pento has continuously denied Child the opportunity to visit his family, including Child's half-sister who he had not seen in over a year, and participate in holiday observances. *Id.* at 42-43. Appellant further stated that the family court judge had specifically

instructed Pento that there was little concern with Child attending holiday and birthday celebrations in Appellant's home and that he was willing to pay for a supervisor to be present at those engagements. *Id.* at 46.

At the conclusion of the hearing, the trial court found Appellant guilty of ICC, concluding that his OFW messages to Pento were "threatening and harassing" in violation of the PFA order. *Id.* at 52-54. In a sentencing order entered the same date, the court directed Appellant to pay a fine of $300 plus the costs of prosecution and serve six months' probation. On June 12, 2023, Appellant filed a post-sentence motion. The trial court denied the post-sentence motion by order and opinion filed on July 17, 2023. Appellant then filed this timely appeal.[3]

Appellant presents the following issues on appeal:

I. Did the trial court commit an error of law by entering a conviction based on an unpled allegation of harassment?

II. Did the trial court commit an abuse of discretion by entering a conviction where there was legally insufficient evidence of indirect criminal contempt?

III. Did the trial court commit an error of law and abuse of discretion by entering a conviction where there was legally insufficient evidence of harassment under 18 Pa.C.S.[]. § 2709?

IV. Did the trial court commit an error of law during trial by interfering with and depriving [Appellant] of his right to a fair trial and to present a defense?

_____

[3] The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On August 21, 2023, the trial court filed a statement indicating that it was relying on its July 17, 2023 opinion.

V. Did the trial court commit an error of law by issuing an illegal sentence following the entry of a conviction for a procedural rule and not a crime?

Appellant's Brief at 4 (unnecessary capitalization and suggested answers omitted).

Appellant first argues that his due process rights were violated because he was not sufficiently placed on notice by the criminal complaint of the charges of which he was convicted. Appellant notes that the complaint identified the incorrect section of the PFA Act as the criminal offense of which he was charged—Section 6113 instead of the correct Section 6114(a)—and did not contain a detailed description of the accusations against him. Criminal Complaint, 3/22/23, at 3; 23 Pa.C.S. §§ 6113, 6114(a). Appellant contends that the complaint identified his only potential violation of the PFA order as being based upon his engaging in communication with Pento, and therefore he went to trial only prepared to defend as to that allegation. Appellant asserts that the Commonwealth "blindsided [him] at trial" when it pivoted to the position that he should be convicted for threatening Pento with civil litigation and harassing messages, even though those charges were not laid out in the complaint, and he was never charged with harassment under the Crimes Code.

Generally, when reviewing an ICC conviction "much reliance is given to the discretion of the trial judge" and we will reverse a contempt finding "only where there has been a plain abuse of discretion." ***Commonwealth v.***

**Boyer**, 282 A.3d 1161, 1167 (Pa. Super. 2022) (quoting **Commonwealth v. Lambert**, 147 A.3d 1221 (Pa. Super 2016)).

To comply with due process, a criminal defendant must be provided with "fair notice of every crime of which [he] is accused," and such notice "must be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial." **Reitz v. Flower**, 245 A.3d 723, 727 (Pa. Super. 2021) (quoting **Commonwealth v. Sims**, 919 A.2d 931, 939-40 (Pa. 2007)); **see also Commonwealth v. Haigh**, 874 A.2d 1174, 1176 (Pa. Super. 2005) ("Thus, as with those accused [of] other crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford."). Where a misdemeanor is charged,[4] the Rules of Criminal Procedure require that the complaint include:

> a summary of the facts sufficient to advise the defendant of the nature of the offense charged, but neither the evidence nor the statute allegedly violated need be cited in the complaint. However, a citation of the statute allegedly violated, by itself, shall not be sufficient for compliance with this subsection[.]

Pa.R.Crim.P. 504(6)(a). "Variations between allegations and proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." **Reitz**, 245

---

[4] This Court has held that ICC under Section 6114(a) of the PFA Act constitutes a misdemeanor of the third degree. **Commonwealth v. Bartic**, 303 A.3d 124, 133 (Pa. Super. 2023).

A.3d at 727 (quoting ***Commonwealth v. Bickerstaff***, 204 A.3d 988, 995 (Pa. Super. 2019)).

We conclude that Appellant's due process argument is waived. "As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal." ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020); ***see also*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). The issue-preservation requirement ensures that the trial court has the opportunity consider the issue and potentially correct it, promoting the orderly and efficient use of judicial resources and providing fairness to the parties. ***Commonwealth v. Hill***, 238 A.3d 399, 407 (Pa. 2020); ***Trigg***, 229 A.3d at 269. The doctrine of waiver applies even where the issue is one of constitutional dimensions. ***In the Interest of T.W.***, 261 A.3d 409, 425 n.9 (Pa. 2021).

Here, Appellant was aware of any alleged due process violation in this case when the Commonwealth began to present its case at trial, yet he did not raise any due process objection or present any argument related thereto at any point during trial. Therefore, this claim is waived. ***See In Interest of A.W.***, 187 A.3d 247, 252-53 (Pa. Super. 2018) (argument that trial court did not protect party's due process rights at hearing was waived because no timely and specific objection was made); ***cf. Reitz***, 245 A.3d at 726 (noting that

defense counsel objected twice at trial to lack of proper notice of nature of charges in ICC prosecution before addressing merits of claim).

Even if we would reach Appellant's due process claim based upon a lack of adequate notice of the charge, we would find that it lacks merit. First, although the criminal complaint identified the wrong section of the PFA Act, the complaint properly placed Appellant on notice that he had been charged with ICC under the PFA Act. The erroneously cited Section 6113 of the PFA Act, 23 Pa.C.S. § 6113, provides the procedure from arrest to hearing on an ICC charge under the applicable statute setting forth the offense, Section 6114(a), the complaint stated that Appellant was charged with "INDIRECT CRIMINAL COMPLAINT [sic]," and the complaint further advised that a valid PFA order was in effect. Criminal Complaint, 3/22/23, at 3-4. Therefore, Appellant could hardly have been surprised at trial to discover that he was facing an ICC charge, and he admits as much in his brief when he states that he had prepared a defense that his communications with Pento were authorized by the PFA order. **See** Appellant's Brief at 22.

The complaint was also not defective based upon the Commonwealth's decision not to charge Appellant with harassment under the Crimes Code, **see** 18 Pa.C.S. § 2709 (setting forth harassment offense), where the ICC charge against Appellant was based, *inter alia*, upon the mandate of the PFA order that he "shall not . . . harass" Pento. Exhibit C-1, at 1. While the harassment provision of the Crimes Code is relevant to the determination of whether Appellant harassed Pento under the PFA order, **see** 23 Pa.C.S. § 6108(a)(9);

- 10 -

*see also infra*, the Commonwealth was not required to separately charge Appellant with harassment or cite the relevant Crimes Code statute in the complaint.

Furthermore, the complaint placed Appellant on sufficient notice of the nature of the allegations against him. The affidavit of probable cause stated that Appellant's communications with Pento on OFW were the subject of the ICC charge and identified the date upon which the offending communications started, March 7, 2023. Criminal Complaint, 3/22/23, at 4. The affidavit further identified the March 22, 2023 message that was at the crux of the case against Appellant, stating that the "context of the messages include threats of civil litigation if [Pento] does not allow [Child] to attend a birthday party at [Appellant's] home." *Id.* As Appellant was apprised that the ICC charge against him was based upon his OFW messages concerning Child's attendance at the birthday party and clarified the date range of the messages that would be presented at trial, we do not find that he was prejudicially surprised in preparing a defense or anticipating the prosecution's proof. *Reitz*, 245 A.3d at 727. In addition, the fact that the complaint did not state that his prosecution was based upon "harassment" of Pento is immaterial as he was not charged with a separate harassment charge under the Crimes Code and he was on notice of the PFA order language that he was not to "abuse, harass, stalk, threaten, or attempt or threaten to use physical force against" Pento. Exhibit C-1, at 1.

In his next two issues, Appellant argues that the evidence was insufficient to sustain his ICC conviction. A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. **Commonwealth v. Chisebwe**, 310 A.3d 262, 267 (Pa. 2024). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. *Id.* at 268. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Bowens**, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

> As we have explained, an ICC charge
>
> consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order.
>
> . . .
>
> To establish [ICC], it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the

- 12 -

intent of the contemnor in committing the act must have been wrongful.

***Commonwealth v. Smith***, 288 A.3d 126, 131 (Pa. Super. 2022) (quoting

***Commonwealth v. Padilla***, 885 A.2d 994, 996-997 (Pa. Super. 2005)).

Appellant challenges the Commonwealth's proof as to the third and fourth elements of ICC. Appellant first argues that the trial court erred in finding that he violated the PFA order by threatening or harassing Pento. Appellant argues that he could not have harassed Pento as his comment that he would file a custody contempt petition was for the legitimate purpose of pursuing his right to litigate custody disputes. Appellant additionally asserts that his communications to Pento through OFW regarding custody matters did not violate the PFA order as they were authorized by that order and superseding custody orders, and he could not have threatened Pento through his OFW messages because "[a] threat of civil litigation was not an act prohibited by the PFA [O]rder." Appellant's Brief at 28.

Looking first to the trial court's finding that Appellant harassed Pento, the PFA Act provides that an order issued under that statute may contain language directing the defendant to refrain from harassing the plaintiff "as defined in 18 Pa.C.S. §[] 2709 (relating to harassment)." 23 Pa.C.S. § 6108(a)(9); ***see also*** 23 Pa.C.S. § 6102(b) (providing that any term not defined in the PFA Act shall have the meaning given to it in the Crimes Code). As relevant here, under Section 2709(a)(3), an individual may be found guilty of harassment if, "with intent to harass, annoy or alarm another, the person .

. . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S. § 2709(a)(3). A "course of conduct" is defined as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct[,]" and may be evidenced by "threatening . . . words." 18 Pa.C.S. § 2709(f). The requirement that the defendant's act served no legitimate purpose is intended "to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor" and to ensure the offense's application "to unarguably reprehensible instances of intentional imposition on another." *Commonwealth v. Coniker*, 290 A.3d 725, 738 (Pa. Super. 2023) (citation omitted). Conduct which is lawful or constitutionally protected will also be found to have a legitimate purpose. *Id.*

Viewing the evidence in the light most favorable to the verdict winner, we conclude that the evidence was sufficient to show that Appellant harassed Pento, as prohibited by the PFA order. We first note that Appellant's offending behavior did not consist of a single, misguided communication but rather involved a series of messages over several weeks in which Appellant repeatedly raised the same request for Child to attend his younger sister's birthday party, notwithstanding Pento's repeated, firm refusals. Pento recounted in her testimony that, before the offending OFW messages, the parties' attorneys had already discussed Appellant's request, which her attorney had refused, and the issue was then brought before the court-appointed therapist who also rejected the proposed visit. N.T., 6/2/23, at 7-

- 14 -

8, 35. Appellant then raised the issue directly with Pento on OFW over a series of messages on March 7 through 9, 2023, with Pento indicating that she believed the birthday visit would violate the PFA order between the parties and stating that Appellant should "[n]ow stop," asking him to "knock it off," and stating that he was "harassing [her] about this now." Exhibit C-2, at 1-4. The exchange of messages culminated on March 22 when, after Pento was an hour late for a video call three days prior, Appellant stated that his attorney "had already typed up" a contempt petition relating to the missed video call but "in an effort to coparent and save the court some time," he would "forgo the [] contempt petition if [Child] is able to attend his sister['s] birthday party." Exhibit C-2, at 6; Exhibit D-2, at 2.

Appellant's conduct comprised a harassing "course of conduct" as the offending OFW communications consisted of a series of messages over several weeks, rather than a single isolated incident. *See Commonwealth v. Salinas*, 307 A.3d 790, 794 (Pa. Super. 2023) (a course of conduct may be found based upon one verbal comment and a separate act moments apart). Furthermore, Appellant had no legitimate purpose for his conduct where he knew he was subject to a PFA order that prohibited him from engaging in harassing or threatening conduct towards Pento, yet he persisted in seeking her acquiescence to the birthday visit even after Pento, her attorney, and the court-appointed therapist had categorically refused and Pento had advised Appellant that he was harassing her.

We are also unpersuaded by Appellant's argument that he had a legitimate purpose for sending his OFW messages because the PFA order authorized him to discuss custody matters with her, including a potential custody contempt petition. The PFA order prohibits Appellant from "harass[ing]" or "threaten[ing]" Pento in any manner and about any topic and does not exclude harassment or threats that occur within the context of a discussion of custody issues. Exhibit C-1, at 1. While Paragraph 5 of the custody order contains temporary custody provisions and provides that those custody provisions may be superseded by a subsequent custody order, *id.* at 4, this qualification only applies to the portion of the PFA order prohibiting Appellant from having any contact with Pento, not the prohibition on harassment and threats. *Id.* at 1 ("Except as provided in Paragraph 5 of this order, [Appellant] shall not contact [Pento], or any other person protected under this order, by telephone or by any other means, including through third persons."). Therefore, while the prevailing custody order permitted Appellant and Pento to communicate regarding custody matters via OFW, N.T., 6/2/23, at 8, 39; Exhibit D-1, ¶ 11, the PFA order barred harassment sent through OFW relating to custody matters to the same extent as harassment on other topics sent via other channels of communication.

Appellant cites to decisions of this Court holding that threats to bring a civil action against an individual do not constitute harassment, arguing that a defendant must have a "non-legitimate reason" for threatening the lawsuit before being found criminally liable. Appellant's Brief at 37; *see*

*Commonwealth v. Battaglia*, 725 A.2d 192, 193-95 (Pa. Super. 1999) (defendant's statement that he would "fucking sue" police officer who instructed him to pick up leaves blown onto a neighbor's property was not of a non-legitimate nature); *Commonwealth v. Wheaton*, 598 A.2d 1017, 1018-20 (Pa. Super. 1991) (defendant's statement that he would sue water company employees or have them arrested if they interfered with his water service was not harassment because maintaining the basic service to his home was a legitimate purpose). This argument ignores, however, that Appellant's harassing conduct did not consist solely of his threat against Pento on March 22, 2023, but rather the series of communications leading up to that message in which he repeatedly raised the potential birthday visit despite repeated refusals from Pento's lawyer, the court-appointed therapist, and Pento herself and Pento's instruction that he should stop communicating with her about the subject. Therefore, the trial court's findings were not simply or primarily based upon Appellant's utterance that he would seek legal redress against Pento in family court based upon the missed video visit, which the trial court recognized was well within his rights. N.T., 6/2/23, at 53-54. Looking at the communications as a whole, we have no doubt that the evidence was sufficient to find that Appellant's conduct consisted of harassment under the PFA order.

With respect to the trial court's finding that Appellant threatened Pento, we note that, although every final PFA order must direct the defendant to refrain from "threatening" the protected party or parties, 23 Pa.C.S. § 6108(a.1)(1), no definition for that term appears in the PFA Act. "As the

- 17 -

legislature did not define this term, its common and approved usage may be ascertained by examining its dictionary definition." **Commonwealth v. Hart**, 28 A.3d 898, 909 (Pa. 2011). Black's Law Dictionary defines a threat as "[a] communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another." Black's Law Dictionary "Threat" (11th ed. 2019). Webster's similarly defines threat as "an expression of an intention to inflict evil, injury, or damage on another usu. as retribution or punishment for something done or left undone" and threaten as to "promise punishment, reprisal, or other distress to" someone. Webster's Third International New Dictionary, 2382 (3rd ed. 2002). As these definitions indicate, a threat does not always imply potential physical harm to an individual, a conclusion which is strengthened in this case where the PFA Act directs that a final PFA order prohibit "threatening" behavior and also "attempting or threatening to use physical force against the plaintiff or minor children." 23 Pa.C.S. § 6108(a.1)(1); Exhibit C-1, at 1.

The evidence clearly showed that Appellant threatened Pento in his March 22, 2023 OFW message. By stating that that his attorney had "already typed up" a custody contempt petition based upon the fact that Child did not appear for a scheduled custody video conference, but Appellant would "forgo" the petition if Child would attend his sister's birthday party, Exhibit D-2, at 2; Exhibit C-2, at 6, Appellant "communicated [an] intent to inflict harm or loss

- 18 -

on" Pento "as retribution or punishment for something [she had] done." Black's Law Dictionary "Threat" (11th ed. 2019); Webster's Third International New Dictionary, 2382 (3rd ed. 2002). The punishments that Pento faced if she did not bend to Appellant's will and allow Child to attend the birthday party included imprisonment or probation for up to six months, a $500 fine, suspension or nonrenewal of her vehicle operating privileges, and the imposition of counsel fees and costs. 23 Pa.C.S. § 5323(g)(1) (listing available punishment options upon finding of contempt of a custody order). Moreover, the message at issue constituted more than a communication of Appellant's intent to subject Pento to punishment for the missed video visit but also served as an effort by Appellant to extract a concession from Pento to allow Child to attend the birthday visit that she had repeatedly refused. Thus, notwithstanding Appellant's right to go to family court and seek redress for Pento's perceived failure to live up to her obligations under the custody order, Appellant's March 22 OFW message constituted a threat that was explicitly prohibited by the PFA order.

Appellant also challenges the Commonwealth's proof with respect to the fourth element of an ICC claim, whether his intent in committing the act was wrongful. **Smith**, 288 A.3d at 131. "Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful." **Commonwealth v. Boyer**, 282 A.3d 1161, 1172 (Pa. Super. 2022) (quoting **Stewart v. Foxworth**, 65 A.3d 468, 472 (Pa. Super. 2013)). In addition, wrongful intent can be imputed if the defendant's act had "substantial

certainty" of violating a PFA order. *Id.* (quoting *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007)). "It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly intentional before imposing sanctions of criminal contempt." *Id.* (quoting *Commonwealth v. Haigh*, 874 A.2d 1174, 1177 (Pa. Super. 2005)). With respect to the intent element of a harassment offense, the evidence must show a "specific 'intent to harass, annoy or alarm another,'" and such intent "may be inferred from the totality of the circumstances." *Coniker*, 290 A.3d at 738 (quoting 23 Pa.C.S. § 6108(a) and *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013)).

Viewing the OFW messages as a whole and considering the context in which they were sent, the evidence was sufficient to show that Appellant acted with wrongful intent and with the specific intent to harass, annoy, and alarm Pento when sending the subject messages. As described above, Appellant was fully aware of the terms of the PFA order entered on consent, and he began to send messages to Pento in March 2023 regarding the birthday visit after the request had already been rebuffed by Pento's lawyer and the court-appointed therapist. Appellant then continued to send messages to Pento regarding the same subject despite her request that he "knock it off" and "[s]top," her admonition that the messages were "harassing," and her direction that the matter should only be addressed with the therapist. Exhibit C-2, at 4. Appellant cites to the trial court's statement when announcing its

- 20 -

verdict that it would "take [Appellant] at . . . [his] word that he just wants to do what's in the best interest of" Child as evidence that the court did not find that Appellant acted with wrongful intent, but this ignores the court's later statement that after being "denied multiple times," Appellant violated the PFA order by, instead of proceeding in family court as was his right, "ratcheting up [] the conversations when she's saying, stop, don't talk about this to me anymore, talk to your lawyer." N.T., 6/2/23, at 52-53. The evidence supports the trial court's conclusion that Appellant committed ICC by threatening and harassing Pento in violation of the PFA order, and therefore his second and third issues merit no relief.

In his fourth issue, Appellant argues that the trial court interfered with his due process right to present his defense in various respects. Specifically, Appellant contends that the court erred by interrupting counsel at several points during trial and requesting that the parties hasten their presentation of the case. N.T., 6/2/23, at 9 ("I don't want to prolong this [proceeding] in any way."), 33 ("This is going glacially. . . [l]et's get to the heart of the matter."). Appellant also argues that the trial court erred by preventing him from introducing into evidence the October 21, 2021 custody order between the parties and only reviewing the February 24, 2023 custody order which post-dated the PFA order, even thought the latter custody order incorporated the prior order's language as to the parties' usage of OFW. *Id.* at 26; Exhibit D-1, ¶ 11 (February 24, 2023 custody order providing that partes could use OFW as set forth in October 21, 2021 order). Appellant finally asserts that the trial

court improperly cut short his counsel's closing argument, stating "[t]his is not a custody matter. Have a seat." N.T., 6/2/23, at 52.

Due process requires, at a minimum, that a defendant in a criminal proceeding have "adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Wright*, 961 A.2d 119, 132 (Pa. 2008). A criminal defendant must be afforded a meaningful opportunity to present a complete defense, and the exclusion of relevant defense evidence violates the defendant's due process rights where the evidence is excluded by an arbitrary rule or where exclusion is disproportionate to the end the rule is designed to serve. *Holmes v. South Carolina*, 547 U.S. 319, 324-26, 331 (2006); *Commonwealth v. Yale*, 249 A.3d 1001, 1012-13, 1020-21 (Pa. 2021). Nevertheless, a defendant's due process rights are not offended when a trial court excludes evidence offered by the defendant on the grounds that is repetitive, not probative, or its probative value is outweighed by unfair prejudice or confusion the issues. *Holmes*, 547 U.S. at 326-27; *see also* Pa.R.E. 403; *Commonwealth v. Williams*, 241 A.3d 1094, 1101 (Pa. Super. 2020) (providing that the admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed where there is a clear abuse of discretion).

"As a general matter, it is indisputable that trial courts have broad discretion in controlling trial conduct." *Commonwealth v. Purnell*, 259 A.3d 974, 984 (Pa. 2021). Pursuant to Pennsylvania Rule of Evidence 611(a), the

trial court may reasonably control the presentation of evidence and the mode of examining witnesses in order to, *inter alia*, "make those procedures effective for determining the truth" and "avoid wasting time." Pa.R.E. 611(a); *see also Purnell*, 259 A.3d at 985. With respect to time limitations on closing argument, our Supreme Court has stated:

> A defendant has a right to summation. The length of closing arguments is left to the discretion of the trial court. Unless there is such an unreasonable limitation of time that it effectively denies a defendant the right to summation, a criminal conviction should not be disturbed.

*Commonwealth v. Hutchinson*, 25 A.3d 277, 315 (Pa. 2011) (quoting *Commonwealth v. Brown*, 676 A.2d 1178, 1185 (Pa. 1996)) (cleaned up).

We conclude that the trial court acted within its authority in managing the trial and did not infringe on Appellant's due process rights or abuse its discretion. We detect no indication from our review of the notes of testimony that the court was biased against Appellant, but rather the court's comments reveal only that it sought to focus both counsel on the issue of whether Appellant's conduct violated the PFA order, without consideration of any extraneous issues, such as the details of the parties' custody arrangement. The trial court also indicated throughout trial that it was well-acquainted with PFA and custody matters and the use of OFW and therefore the parties could get to the point and only address the allegedly offending communications. *See, e.g.*, N.T., 6/2/23, at 10, 16. The trial court thus acted within its authority to direct the parties to aid the truth-determining process and to

avoid wasting time. Pa.R.E. 611(a); **Purnell**, 259 A.3d at 985. While Appellant claims that the court inappropriately declined to admit the October 21, 2021 custody order, he points to nothing in the prior custody order that would be relevant to the instant dispute apart from the fact that the parties were permitted to discuss custody matters through OFW, a fact that was already clearly shown at trial. **See** N.T., 6/2/23, at 8, 39; Exhibit D-1, ¶ 11. Therefore, even if the trial court erred in declining to admit the custody order, Appellant sustained no prejudice therefrom and the court's error would be harmless. **See Commonwealth v. Fulton**, 179 A.3d 475, 493 (Pa. 2017) (an error is harmless where the error does not cause prejudice or the prejudice is *de minimis*).

We also do not find that the trial court unreasonably limited the defense's summation. The record reflects that trial itself was brief, with limited testimony from two witnesses and a small number of exhibits, and the Commonwealth made a concise closing argument that was shorter than the amount of time that defense counsel spoke. **Compare** N.T., 6/2/23, at 49-50 **with id.** at 50-52. While the trial court ultimately interrupted Appellant's summation before defense counsel had concluded, the court did so based on the fact that counsel's argument centered on whether Pento was unreasonably refusing to permit visitation under the custody order, rather than whether Appellant had violated the PCRA order. **Id.** at 52. In light of the short nature of trial and defense counsel's argument straying into matters of limited relevance, we conclude that the trial court did not unreasonably limit

Appellant's right to summation. In any event, we note that Appellant did not explain what additional relevant argument he would have presented and therefore has not shown prejudice from any alleged error. **See Brown**, 676 A.2d at 1185 (rejecting challenge to denial of right to summation where the appellant "fail[ed] to state how he was prejudiced by the time limitation or what could have been done if more time had been allowed"). Appellant's fourth appellate issue accordingly merits no relief.

In his final issue, Appellant argues that the trial court imposed an illegal sentence by convicting him under Section 6113 of the PFA Act rather than Section 6114(a) of the same act, where the former statute pertains only to the pre-trial procedure for an ICC charge and the latter actually sets forth the applicable offense. 23 Pa.C.S. §§ 6113, 6114(a). Noting that a sentence without statutory authorization is illegal, **see Commonwealth v. Fisher**, 303 A.3d 1078, 1084 (Pa. Super. 2023) ("If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.") (citation omitted), and that the trial court failed to correct the alleged error after Appellant pointed it out in his post-sentence motion, Appellant contends that his "illegal conviction and illegal sentence must be vacated." Appellant's Brief at 46.

As discussed above, the record reflects that Appellant proceeded to trial on the ICC charge: he was charged with ICC under the PFA Act, Criminal Complaint, 3/22/23, at 3-4, the trial court announced at the end of trial that it was "find[ing him] in indirect criminal contempt" based on "a violation of

the protection from abuse order," N.T., 6/2/23, at 54, and the sentencing order reflects that Appellant was sentenced for ICC, albeit without listing the specific statute that forms the basis of the conviction. Sentencing Order, 6/2/23. However, in light of the fact that the lower court's docket repeats the error of the complaint and lists Appellant as having been convicted of Section 6113 rather than Section 6114(a), we vacate the judgment of sentence and remand for the trial court to issue a new sentencing order, imposing the same sentence[5] but stating that Appellant was convicted of Section 6114(a) of the PFA Act. **See Commonwealth v. Umoh**, 311 A.3d 24, 30, 34 (Pa. Super. 2024) (vacating judgment of sentence and remanding for issuance of new sentencing order to correct clerical error by trial court listing incorrect contempt statute).

Judgment of sentence vacated. Case remanded for correction of sentencing order. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

_____

[5] The sentence imposed by the trial court of six months' probation and a $300 fine is a legal sentence under the PFA Act. **See** 23 Pa.C.S. § 6114(b)(1)(B).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/24/2024